**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **WEBER AIRCRAFT, L.L.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:12-cv-00666-RC-ALM** |
| | § | |
| **VIKRAM KRISHNAMURTHY,** | § | |
| **MOUMITA ROY, RYAN VAUGHN and** | § | |
| **ANTONIO VENTORINI,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO SEVER AND TRANSFER**

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Vikram Krishnamurthy ("Krishnamurthy"), Moumita Roy ("Roy"), Ryan Vaughn ("Vaughn"), and Antonio Ventorini ("Ventorini") (collectively the "Defendants") move to dismiss all claims asserted by Weber Aircraft, L.L.C. ("Weber" or "Plaintiff") due to lack of personal jurisdiction. In the alternative, Defendants move to sever and transfer all claims Weber asserts against Vaughn in this action to the United States District Court for the Southern District of Florida and to transfer the claims against the remaining three Defendants to the United States District Court for the District of Arizona. As a last alternative, all Defendants move to transfer this case to the Northern District of Texas pursuant to Fed. R. Civ. P. 12(b)(3).

**I.      INTRODUCTION**

This case is Weber's second attempt to deprive four former employees of their right to earn a livelihood by seeking to enforce restrictive covenants that are overly broad and unsupported by legitimate business interests contained in its Invention and Confidentiality / Non-Compete Agreement (the "Agreement"), which Weber forced all four Defendants to sign during their employment with it. Prior to filing the instant suit, Weber first sought unsuccessfully to

subject Defendants to pre-suit discovery by filing separate petitions against each Defendant in Dallas County district court under Rule 202, Tex. R. Civ. P.  (the "Petitions").

As a threshold matter, Plaintiff failed to allege any ground that would support personal jurisdiction over these Defendants.  Notwithstanding that fact, even had it pled grounds for exercising such jurisdiction, personal jurisdiction should not be exercised over these Defendants because the only contact they had with Texas is that they entered into the Agreement in Texas and previously worked for the Plaintiff in this state.  Plaintiff has not set forth any allegations that a breach of the Agreement occurred in Texas.  As such, there is no personal jurisdiction over Defendant in this forum.

Likewise, the claims against Vaughn should not be consolidated with those against the other Defendants.  The only relationship between the claims against Krishnamurthy, Roy, and Ventorini (collectively, the "Arizona Defendants") and the claims against Vaughn is that Plaintiff alleges that each violated the same form Agreement.  While there is a some minimal factual overlap among the claims against the Arizona Defendants, the claim against Vaughn is wholly unrelated to those Defendants.  In this new litigation, the claims asserted against Defendants are not sufficiently related to justify a single consolidated action in a forum that is inconvenient for all four Defendants and expected third-party witnesses.[1]  However, there is a common hardship amongst all Defendants - Weber's selection of this forum places a substantial burden on the Defendants to litigate in a forum over one-thousand miles from their homes, jobs and the locations where the alleged breaches of the Agreement took place.  The key evidence, witnesses, and affected third parties are located in Arizona and Florida, not the Eastern District of Texas.  Thus, in the event outright dismissal is not granted, the claims should be transferred to

---

[1]  It is anticipated that Plaintiff will seek to depose current employees of Defendants' new employer, BE Aerospace, Inc. ("BE"), who are located in Florida and Arizona.

forums more convenient to the Defendants and anticipated witnesses.

As a last alternative, all Defendants move to transfer this case to the Northern District of Texas pursuant to the very terms of the Agreement that Weber attempts to enforce.  The Agreement calls for disputes arising under the Agreement to be litigated in Dallas County, Texas, which is located in the Northern District of Texas.  As such, at the least, venue is not appropriate in this Court.

## II.    BACKGROUND

On June 28, 2012, Weber filed Petitions for Pre-suit Discovery in 193rd District Court, Dallas County, Texas, against each defendant individually.   These actions were later consolidated because there were fundamental common issues as to Weber's right to engage in pre-suit discovery and as to the right of the Defendants' current employer, BE, to intervene in the litigation.  BE was permitted to intervene in the matter, and on August 23, 2012, after briefing and argument of counsel, Judge Carl Ginsberg denied Plaintiff's Petitions for pre-suit discovery. *See Weber Aircraft, LLC v. Krishnamurthy*, No. DC-12-07136-L (Tex. Dist. 193. Aug. 23, 2012) (Order on Petition for Pre-suit Discovery), attached hereto as "Exhibit A."

After receiving the adverse ruling in Dallas County, Plaintiff engaged in transparent forum shopping and filed this action in the 235th District Court, Cooke County, Texas, the county in which Weber is domiciled.  Weber seeks to enforce the non-compete covenants contained in the contracts of the four former employee/Defendants.   The form of agreement for each Defendant is identical, including a forum selection clause specifying Dallas County, Texas, as the venue in which all litigation was to be filed.  Pursuant to 28 U.S.C. § 1441(b), Defendants timely removed the case to this Court.  Pursuant to this Court's Order, Plaintiff filed its First Amended Complaint on November 20, 2012.

III.    **THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS**.

Personal jurisdiction over non-resident defendants must be measured as of the date a suit was filed.  *See Freeport-McMoRan, Inc., et al. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("But nothing in [*Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)] suggests any change in the well-established rule that diversity of citizenship is assessed at the time the action is filed.").  As established below, there is no personal jurisdiction over any of Defendants in this forum.  Therefore, this Court should refuse to exercise personal jurisdiction over these non-resident Defendants.

A.    **The Standard for Exercising Personal Jurisdiction**.

"A federal court has personal jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution."  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (emphasis added); *Digital Generation, Inc. v. Boring*, 2012 WL 1413886, at *3 (N.D. Tex. Apr. 24, 2012) (same).  The Texas long-arm statute extends to the limits of federal due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).  Therefore, this Court must determine whether: (1) the Defendants have "minimum contacts" with the State of Texas; and (2) whether the exercise of personal jurisdiction over the Defendants would offend "traditional notions of fair play and substantial justice."  *Ruston Gas Turbines, Inc.*, 9 F.3d at 418 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[2]

_____

[2] To determine the jurisdictional issue, this Court may rely on affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery. *Valley Dynamo, L.P. v. Warehouse of Vending & Games, et al.*, 168 F. Supp. 2d 616, 619 (N.D. Tex. 2001) (citing *Command-Aire Corp. v. Ontario Mechanical Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992)). "Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Id.* (citation omitted). The initial burden is on the plaintiff to sufficiently demonstrate that the non-resident defendant is within the provisions of the Texas long-arm statute. *Information Servs. Group, Inc., et al. v. Rawlinson*, 302 S.W.3d at 397 (Tex. App. – Houston Nov. 5, 2009) (citations omitted).

The non-resident defendant's relationship with the forum state is considered to determine two types of jurisdiction: general jurisdiction, where the focus is on continuous and systematic contacts with the forum; or specific jurisdiction, where the focus is on the relationship among the defendant, the forum, and the litigation itself.  *Boring*, 2012 WL 1413886, at *4; *Information Servs. Group, Inc., et al. v. Rawlinson*, 302 S.W.3d 392, 398 (Tex. App. – Houston Nov. 5, 2009) (citations omitted).  "Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Boring*, 2012 WL 1413886, at *4; *see Rawlinson*, 302 S.W.3d at 398 (citations omitted) ("For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be substantial connection between those contacts and the operative facts of the litigation.").

After making a determination that the non-resident defendant has minimum contacts with the forum state, the fairness and reasonableness of exercising personal jurisdiction must then be weighed, which includes consideration of the following factors:  (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies.  *Boring*, 2012 WL 1413886, at *4 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).

**B.**     **Defendants Do Not Have Sufficient Contacts With The State Of Texas To Establish Either General Or Specific Jurisdiction**.

**1.**     **General Jurisdiction Does Not Exist Over the Defendants**.

In the Complaint, Plaintiff does not allege that any of Defendants have any continuous, systematic or substantial contacts with the State of Texas.  Indeed, the facts are to the contrary.  Defendant Vaughn is a resident of Florida and has been a resident of Florida since January 2012.

*See* Affidavit of Vaughn, Ex. B, ¶3. He currently works for BE in Medley, Florida.  Ex. B, ¶4. He is not a resident of Texas and does not have a registered agent in Texas, nor is he required to have one for service of process. *See* Ex. B, ¶3.  He does not engage in business in Texas and does not own any real or personal property in Texas. He does not have a Texas phone number, bank account or post office box in Texas. Furthermore, Defendant Vaughn has not solicited any employees of Plaintiff who are located in Texas, nor has he contacted clients of Plaintiff who are located in Texas, or anywhere else. He also did not disclose any confidential or proprietary information belonging to Plaintiff to which he had knowledge or obtained while in Texas and does not use any of Plaintiff's confidential or proprietary information in his position with BE. Ex. B, ¶¶10, 12.  The use of such information while employed with BE would be in direct violation of Vaughn's promises to BE.  Ex. B, ¶11.

Defendant Krishnamurthy is a resident of Arizona and has been a resident of Arizona since April 2012.  Affidavit of Krishnamurthy, Ex. C, ¶¶3-4.  He currently works for BE in Tucson, Arizona.  Ex. C, ¶6. Like Vaughn, he does not have a registered agent in Texas nor is he required to have one for service of process.    He does not engage in business in Texas and does not own any real or personal property in Texas.  He does not have a Texas phone number, bank account or post office box in Texas.   Furthermore, Defendant Krishnamurthy has not solicited any employees of Plaintiff who are located in Texas nor has he contacted clients of Plaintiff who are located in Texas, or anywhere else.  Ex. C, ¶12.  He also did not disclose any confidential or proprietary information belonging to Plaintiff to which he had knowledge or obtained while in Texas and does not use any of Plaintiff's confidential or proprietary information in his position with BE.  Ex. C, ¶¶9-10.  The use of such information while employed with BE would be in direct violation of Krishnamurthy's promises to BE.  Ex. C, ¶10.

Defendant Roy is a resident of Arizona and has been a resident of Arizona since April 2012.  Affidavit of Roy, Ex. D, ¶¶3-4.  Roy currently works for BE in Tucson, Arizona. Ex. D, ¶6.  She does not have a registered agent in Texas nor is she required to have one for service of process.  She does not engage in business in Texas and does not own any real or personal property in Texas. She does not have a Texas phone number, bank account or post office box in Texas.  Furthermore, Defendant Roy has not solicited any employees of Plaintiff who are located in Texas nor has she contacted clients of Plaintiff who are located in Texas, or anywhere else. Ex. D, ¶11.  She also did not disclose any confidential or proprietary information belonging to Plaintiff to which she had knowledge or obtained while in Texas and does not use any of Plaintiff's confidential or proprietary information in her position with BE.  Ex. D, ¶9.  The use of such information while employed with BE would be in direct violation of Roy's promises to BE. Ex. D, ¶10.

Defendant Ventorini is a resident of Arizona and has been a resident of Arizona since May 2012.  Affidavit of Ventorini, Ex. E, ¶¶3-4.  He currently works for BE in Tucson, Arizona. Ex. E, ¶6.  Like the other Defendants, he does not have a registered agent in Texas nor is he required to have one for service of process.  He does not engage in business in Texas and does not own any real or personal property in Texas.  He does not have a Texas phone number, bank account or post office box in Texas.  Furthermore, Defendant Krishnamurthy has not solicited any employees of Plaintiff who are located in Texas nor has he contacted clients of Plaintiff who are located in Texas, or anywhere else.  Ex. E, ¶10. He also did not disclose any confidential or proprietary information belonging to Plaintiff to which he had knowledge or obtained while in Texas and does not use any of Plaintiff's confidential or proprietary information in his position

with BE. Ex. E, ¶8.  The use of such information while employed with BE would be in direct violation of Ventorini's promises to BE. Ex. E, ¶9.

Based on the foregoing, there are insufficient minimum contacts for Texas to exercise general jurisdiction over any of the Defendants.  Simply signing an agreement agreeing not to compete in Texas is insufficient to establish personal jurisdiction under the general jurisdiction prong.  *See Rawlinson*, 302 S.W.3d at 407 ("Therefore, we decline to adopt a position that an employee, by agreeing to a non-compete or non-solicitation agreement, is effectively consenting to jurisdiction as far-reaching as the scope of the agreement, which in this case is worldwide.  It cannot be enough that [the employee] simply agreed not to compete or solicit clients in Texas.  To hold otherwise would supplant the minimum-contacts analysis and thus vitiate the due-process requirements for personal jurisdiction.").

### 2.       There is no Specific Jurisdiction Over Defendants.

Likewise, Plaintiff cannot establish the existence of any specific jurisdiction.  Notably, Plaintiff does not allege in its Amended Complaint that any of Defendants breached the Agreement while in Texas.  *See Rawlinson*, 302 S.W.3d at 400  ("[A]ppellants do not allege that Rawlinson engaged in any acts constituting breach of contract in Texas . . . " to establish jurisdiction). "Merely contracting with a Texas company does not constitute purposeful availment for jurisdictional purposes.  *Id*. (citing *IRA Res. Inc. v. Griego*, 221 S.W.3d 592, 597-98 (Tex. 2007); *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App. – Houston 2003, pet. denied); *Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration*, 84 S.W.3d 830, 838 (Tex. App. – Houston 2002, pet. denied)).  Furthermore, simply being employed by a Texas company does not make an employee subject to jurisdiction in Texas.  *Id*. (citing *Gonzalez v. AAG Las Vegas, LLC*, 317 S.W.3d 278, 285-87 (Tex. App. – Houston 2009, no pet.); *Rushmore*

*Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524, 530 (Tex. App. – Dallas 2007, no pet.); *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 483 (Tex. App. – Dallas 2003, no pet.)).

Plaintiff's claims are for breach of contract, damages and injunctive relief. The focus of Plaintiff's Amended Complaint is on Defendants' employment with BE, which Plaintiff contends, in and of itself, is a violation of their Agreements. Based on Plaintiff's own assertions, none of Defendants violated the Agreements while in Texas because they never worked for BE in Texas. Instead, the alleged breaches occurred outside of Texas, namely in Florida and Arizona, the locations of the current employment of Defendants.

Plaintiff does not contend that Defendant Vaughn committed a violation of the Agreement before he moved to Florida to begin working for BE. Am. Compl. ¶23 ("On January 30, 2012 . . . Defendant Vaughn began working for B/E in Medley, Florida."). Likewise, Plaintiff does not contend that Defendants Krishnamurthy, Roy and Ventorini committed any violation of the Agreement before they moved to Arizona. Am. Compl. ¶24 ("However, on April 16, 2012 . . . both Roy and Kristhnamurthy began working for B/E in its Tucson, Arizona facility. Ventorini began working at the same facility on May 7, 2012."). There is no question that all work by these Defendants for BE (which Weber contends breached the Agreement) was performed outside of Texas. Plaintiff makes no allegations that: (1) Defendants ever worked for BE while in Texas; (2) Defendants ever solicited any employees of Plaintiff located in Texas or while Defendants were in Texas; (3) Defendants ever solicited Plaintiff's clients located in Texas or while Defendants were in Texas; or (4) Defendants disclosed any confidential or proprietary information belonging to Plaintiff in Texas. Therefore, Plaintiff does not allege that Defendants engaged in any acts constituting a breach of contract in Texas.

Further, Defendants are former employees of Plaintiff, not current employees.  Merely signing an agreement with Plaintiff, in order to perform work for Plaintiff, does not constitute purposeful, *indefinite* submission to jurisdiction in Texas.  *See Rawlinson*, 302 S.W.3d at 400.  The mere fact that Defendants worked for a Texas corporation in Texas does not make them *now* subject to personal jurisdiction in this forum when they have each moved to other states with no intent to return.  Plaintiff has asserted no facts alleging any intent on the part of the Defendants to return to Texas to avail themselves of this forum, and any such allegations would be inaccurate, in any event.  Based on this information, there is no specific jurisdiction as to Defendants, and the Court should dismiss this case under Rule 12(b)(2) for lack of personal jurisdiction.

C.    **Even If There Is A Basis For Personal Jurisdiction, Exercising Personal Jurisdiction Over Defendants Would Offend The Traditional Notions Of Fair Play And Substantial Justice**.

Even if Defendants had minimum contacts with the State of Texas, which Defendants' deny, the exercise of personal jurisdiction would not be fair or reasonable.  The factors to determine whether the exercise of jurisdiction would be fair and reasonable include:  (1) the burden imposed on Defendants; (2) Texas' interests in the matter; (3) Plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) Texas' shared interest in furthering social policies.  *See Boring*, 2012 WL 1413886, at *4 (citation omitted).  These factors persuade against the exercise of jurisdiction under the facts presented at bar.

First, the burden on each Defendant would be significant.  Being hauled back to Texas to litigate an agreement, merely entered into in Texas, would be extremely burdensome because each Defendant is located significantly beyond Texas, namely in Florida and Arizona.  The

burden is exacerbated given that Plaintiff does not allege that Defendants violated the agreement in Texas.

Second, because none of Defendants reside in Texas and have not been accused of violating the Agreements in Texas, the State has little interest in resolving this matter.  The only connection to Texas is Plaintiff, a Texas limited liability company and subsidiary of an international corporation.

Third, Texas obviously is more convenient and effective for Plaintiff's purposes.  But this convenience is significantly outweighed by the burden placed on Defendants who are individuals, not corporations, who would have to travel back to Texas and defend themselves in this forum with which they maintain no connection.

Fourth, Texas has just as much interest in allowing this dispute to be heard in Florida and Arizona as it does in keeping it in Texas.  Both of those jurisdictions are available for Plaintiff to pursue its claims against Defendants and are the respective jurisdictions in which Plaintiff alleges the breaches of the Agreements occurred.  As such, those forums have a greater interest in this litigation than Texas.

Finally, Texas' shared interest in social policies is minimal.  Plaintiff has not alleged that Defendants breached the Agreements in Texas.  Plaintiff has not alleged that the Defendants solicited employees or clients in Texas or anywhere else.  Nor does Plaintiff contend that Defendants have disclosed confidential or proprietary information of Plaintiff in Texas, or that Defendants competed with Plaintiff in Texas.  Therefore, requiring Defendants to litigate in this jurisdiction would not be reasonable and offends the traditional notions of fair play and justice. *Id.*

**IV.   IN THE ALTERNATIVE, THIS COURT SHOULD SEVER THE CLAIMS ASSERTED AGAINST VAUGHN FROM THE REMAINING DEFENDANTS AND TRANSFER THE SEVERED CLAIMS TO THE SOUTHERN DISTRICT OF FLORIDA AND DISTRICT OF ARIZONA, RESPECTIVELY.**

Even if the Court chooses to exercise personal jurisdiction over Defendants, resolving the claims against all four Defendants in Texas is neither fair nor efficient.  Because the claims against Defendants are factually distinct from each other, this Court should sever the claims against Vaughn from the claims against the Arizona Defendants and transfer the severed actions to Florida and Arizona, respectively.

The claims against Vaughn are unique from those against the other Defendants. Not only do they rely on a distinct set of facts, evidence, and legal issues, but Vaughn also lives and works two-thousand miles from the Arizona Defendants in a BE location that manufactures an entirely different product line than BE's Tucson facility at which the remaining Defendants are employed.  These factors materially affect the analysis as to whether Vaughn could have breached the Agreement and whether the Agreement is supported by a legitimate business interest.  Additionally, the physical evidence and key witnesses for the claims against Vaughn are all located in Florida.  Because the Arizona employees work on a completely different product than Vaughn, the analysis of whether a breach has occurred by the Defendants on their respective products and for the respective customers for which the product is being designed differs greatly.  In light of these significant differences, the claims against Vaughn should be severed from the claims against the Arizona Defendants, and the claims transferred to Florida and Arizona, respectively.

### A.   This Court Has the Authority to Sever the Claims Asserted Against Vaughn From Those of the Remaining Defendants.

Rule 21 of the Federal Rules of Civil Procedure permits a court to sever any claim against a party where doing so serves an interest in preserving judicial economy.  The heading of Rule

21 is "Misjoinder and Non-joinder of Parties," but it does not restrict severance to misjoinders. Consequently, the decision to sever an action may proceed along two distinct paths: (1) severance for misjoinder; and (2) severance of an otherwise properly joined action.  *Id*.

Rule 21 does not establish the standard for misjoinder, so "courts have looked to Rule 20 for guidance."  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citation omitted).  That is, if joinder was improper under Rule 20, then the remedy is to sever the claim under Rule 21.  Rule 20 permits joinder of defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and,
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  As established above, Plaintiff cannot satisfy either prong of this test. There is no commonality as to all Defendants, other than their having executed the same form Agreement.  The claims against Vaughn are improperly joined because they do not arise from the same transaction, occurrence, or series of transactions or occurrences as the claims against the Arizona Defendants and will not involve a fact of law common to all Defendants.  Rule 21 does not define events constituting a transaction, occurrence, or series of transaction and occurrences, and "[t]he Fifth Circuit has not endorsed a single test to determine when claims arise from the 'same transaction or occurrence.'"  *See Perez v. Grupo TMM, S.A.B.*, 2009 U.S. Dist. LEXIS 27493 at *9 (S.D. Tex. 2009).[3]  Regardless of the approach adopted, however, federal courts throughout the country "have rejected the notion that the 'same transaction or occurrence requirement' may be construed to allow joinder of parties having only 'similar' claims; for

---

[3] Two tests that are frequently used by courts are the "related activities" test and the "logical relationship test," but neither test has been adopted by the Fifth Circuit.

example, breach of contract claims based on the same form contract." *See Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 n. 1 (Fed. Cl. 2004) (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988) (finding that a loan made to the plaintiff by one defendant was unrelated to similar loans made to the plaintiff by other defendants and that joinder was therefore improper)); *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031–1032 (4th Cir. 1983) (multiple plaintiffs alleging similar defects with their automobiles failed to meet same transaction requirement because cars were purchased at different times); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (competitors alleged to have infringed the same patent could not be joined as defendants in a single action); *Movie Sys., Inc. v. Abel*, 99 F.R.D. 129, 130 (D. Minn. 1983) ("It may be that the complaints assert a right to relief against all defendants arising from similar transactions, but the rule permitting joinder requires that such arise from the same transactions.").

In the present case, the only relationship between the claims against Vaughn and the claims against the Arizona Defendants is that all Defendants signed the same form Agreement. Vaughn terminated his employment several months before the Arizona Defendants left Weber. He had no contact with the Arizona Defendants after he began working at BE, nor did he play a role in their hiring.  Furthermore, Vaughn works in one of BE's Florida facilities that manufactures an entirely different product line than those manufactured in Tucson and worked on by the remaining Defendants.  The Arizona Defendants, in contrast, work in the Super First Class suite division in Tucson, a plant that neither manufactures nor certifies any type of seating as does the Florida operation.  Consequently, the claims against the Arizona Defendants are not part of the same transaction, occurrence, or series of transactions or occurrences as the claims against Vaughn.

**B.      Even if Weber Aircraft Could Meet the Requirements for Joinder, Which Is Denied, This Court Should Use Its Discretion to Sever the Florida Claim.**

Even if the proposed joinder satisfies the two-prong test, which is denied, the Court still has "discretion to refuse joinder in the interest of avoiding prejudice and delay, or safeguarding principles of fundamental fairness."  *Acevedo*, 600 F.3d at 521 (citations omitted).  In other words, "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims." *Id.* at 522.

Just as a court has discretion to deny joinder, it also has "broad discretion to sever issues to be tried before it," even if an action was properly joined.  *See Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).  This discretion includes severing an action and transferring the severed claims to another venue.  *See Carnival Corp. v. Tug W.O. Watson*, 2003 U.S. Dist. LEXIS 3358, at *3, (E.D. La. 2003) (citations omitted) ("A court has broad discretion to sever issues under Rule 21, and that discretion similarly allows for the severance and transfer of parties in the interest of justice and not merely as a result of misjoinder."); *see also Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984) (holding that if an action could have been brought against one or more defendants in the court to which transfer is sought, then "the claims against those defendants may be severed and transferred while the claims against the remaining defendants . . . are retained in the original court." ) (*overruled on other grounds* by *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987)).

Courts in the Fifth Circuit have exercised their discretion to sever otherwise properly joined actions to transfer one or more of the claims to a more appropriate venue for the sake of convenience and in the interest of justice.  *See Norwood v. Raytheon Co.*, 2007 U.S. Dist. Lexis 61423, *19 (W.D. Tex. 2007) ("Severance can additionally be appropriate when a court wishes

to transfer claims against certain parties to a more convenient forum."); *Tug W.O. Watson*, 2003 U.S. Dist. Lexis 3358, *3 (citations omitted) ("A court has broad discretion to sever issues under Rule 21, and that discretion similarly allows for the severance and transfer of parties in the interest of justice and not merely as a result of misjoinder."). Thus, Courts in this district have acknowledged a "broad discretion to sever" and "look to whether severance of a properly joined defendant would promote judicial economy." *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, 2012 U.S. Dist. LEXIS 114503, *14 (E.D. Tex. 2012) (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)).

Discretionary severance is appropriate here, even if the claims were otherwise properly joined, which is denied, to an appropriate forum. Severance and transfer would promote convenience and fairness for Defendants, key witnesses, and other affected third-parties, such as BE. Additionally, it is in the interest of justice to avoid the unnecessary confusion and waste of judicial resources that would result from adjudicating minimally-related claims that will require distinct evidence to be presented.

### C.   The Severed Claims Should Be Transferred To Florida and Arizona, Respectively.

The claims against Vaughn satisfy the requirements for transfer to the Southern District of Florida, if severed from the claims against the Arizona Defendants. Similarly, the claims against the Arizona Defendants qualify for transfer to the District of Arizona. These respective forums are the most efficient locations in which to adjudicate these claims which allege different facts as to the Florida and Arizona Defendants.

Transfer of venue is governed by 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented."  Section 1404(a) grants discretion to the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Even valid and enforceable forum selection clauses do not bind courts considering a transfer of venue under Section 1404(a).  *See Stewart Org., Inc.*, 487 U.S. at 29 (holding that a motion to transfer requires a court to balance case-specific factors, and the presence of a forum selection clause will be a significant but not dispositive factor in the district court's calculus).

The party seeking the transfer must demonstrate good cause by showing that the transferee venue is clearly more convenient.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 5th Cir. 2008) (en banc).  Here, good cause has been shown for the transfer.

**D.      The Actions Could Have Been Brought In Florida And Arizona**.

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  28 U.S.C. § 1391 provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391.  Vaughn resides in Florida.  Krishnamurthy, Roy, and Ventorini all reside in Tucson, Arizona.  Therefore, an action could have been brought against Vaughn in the Southern District of Florida and against the Arizona Defendants in the District of Arizona.  For Defendants, key witnesses, and the judiciary, it would be more convenient to transfer the action against Vaughn to the Southern District of Florida and against the Arizona Defendants to the District of Arizona.

**E.      The Private Interest Factors Support A Transfer To Florida And Arizona**.

If the action could have been brought in the transferee court, then Fifth Circuit uses a

multi-factored analysis, weighing whether private and public interest factors support a transfer. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d at 203.

The Southern District of Florida and the District of Arizona will provide greater access to the sources of proof.  The heart of the relevant evidence in this case is the work that the Florida Defendant and the Arizona Defendants currently perform at the BE's respective facilities in Florida and Arizona, so the key witnesses, records, and documents are located in those locations. Thus, the relative ease of access to sources of proof weighs heavily in favor of transferring the action against the Florida Defendant to the Southern District of Florida and against Arizona Defendants to the District of Arizona.

The convenience of non-party witnesses may be the most important factor in ruling on a motion to transfer.  *Z-Tel Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp. 2d 567, 573 (E.D. Tex. 2004).  Key witnesses are located in Florida and Arizona, outside the subpoena power of the Eastern District of Texas, including, for example, Jim Yuhas, Vice President of Engineering at BE, who is located in Arizona and will testify about the hiring process and current job responsibilities for the Arizona Defendants.

Attendance in the Eastern District of Texas for many of these critical third party witnesses is unduly burdensome.  The Fifth Circuit applies the "100 mile rule" to witness convenience analysis:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  Additional distance

> means additional travel time; additional travel time increases the
> probability for meal and lodging expenses; and additional travel
> time with overnight stays increases the time which these fact
> witnesses must be away from their regular employment.
> Furthermore, the task of scheduling fact witnesses so as to
> minimize the time when they are removed from their regular work
> or home responsibilities gets increasingly difficult and complicated
> …

*See In re Volkswagen AG*, 371 F.3d at 204-05.  The Eastern District of Texas is nearly one-thousand miles from the Southern District of Florida and the District of Arizona.  As discussed above, the Arizona Defendants' likely witnesses reside in Arizona and the Florida Defendant's likely witnesses reside in the Southern District of Florida.  Consequently, this factor weighs heavily in favor of Florida and Arizona.

This litigation is in its earliest stages.  This Court has not yet invested significant time or other resources into the resolution of the case.  There would be no need for duplicative briefing or case management.  As a result, there is no foreseeable reason that the Texas venue would be easier, faster, or less expensive than Florida and Arizona.

**F.     Public Interest Factors Support a Transfer to Florida and Arizona**.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen AG*, 371 F.3d at 203 (5th Cir. 2004).

According to statistics available for 2011 at the United States Courts website, the median time to trial interval in the Eastern District of Texas is 25.1 months.[4]  The same interval for the

---

[4] The basis for all data regarding median time to trial interval used in this motion is Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of

District of Arizona is 25.4 months, so this factor is neutral.

The public interest factor analysis for Vaughn has one notable difference from the analysis for the Arizona Defendants: court congestion is significantly lighter in the Southern District of Florida than in the Eastern District of Texas.  While the median time to trial interval in the Eastern District of Texas is 25.1 months, the same interval for the Southern District of Florida is 14.8 months—a difference of nearly a year.  Transferring the action against Vaughn to the Southern District of Florida will resolve this dispute more expeditiously than keeping it in the Eastern District of Texas.  In all other respects, the public interest analysis for Vaughn mirrors the analysis for the Arizona Defendants and militates toward transfer.

Further, Florida and Arizona's local interest in adjudicating this case outweighs the local interest of the Eastern District of Texas.  Although Weber is located in Texas, the Arizona Defendants are not, nor is Vaughn.  Further, the outcome of the case could have a direct impact on BE's operations in Florida and Arizona.  Most of the operative facts relating to whether the Defendants breached the Agreement occurred and continue to occur in Florida and Arizona. Thus, this factor weighs heavily in favor of transfer.

The conflict of law factor is neutral because the Agreement has a choice of law provision designating the law of Texas as controlling.  While this Court is likely more familiar with Texas law than a Florida and Arizona court, all district courts are competent to apply the law of other states. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 500 (1987) ("[A] district court sitting in diversity is competent to apply the law of a foreign State.").  Consequently, the factors weigh heavily in favor of transfer.

---

Disposition, During the 12-Month Period Ending March 31, 2011, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/C05Sep10.pdf.

**V.     IN THE EVENT TRANSFER OF THE SEVERED CLAIMS TO FLORIDA AND ARIZONA IS NOT GRANTED, ALL CLAIMS SHOULD BE TRANSFERRED FROM THIS COURT TO THE NORTHERN DISTRICT OF TEXAS**.

Weber Aircraft waived its right to enforce the forum selection clause contained in the Agreement when it knowingly chose to forum shop and file suit in a different venue than the one specified in the Agreement.  *See In re ADM Investor Services, Inc.*, 304 S.W.3d 371, 374 (Tex. Sup. Ct. 2010) ("A party waives a forum selection clause by substantially invoking the judicial process to the other party's detriment or prejudice.").  However, if venue is proper anywhere in Texas, it is only proper in the Northern District, pursuant to the forum selection clause in the Agreements that were drafted by Weber.  Although Weber has waived its right to enforce the forum selection clause, the Defendants have not.

Weber knew it should properly have brought this action in Dallas County, as evidenced by its filing of the Petition for Pre-suit Discovery in that venue.  Now, after receiving an adverse result there, Weber chose to forum shop, knowing it would cost Defendants time and expense to relocate the suit to a proper forum.  This Court should not sanction Weber's blatant forum shopping and, at a minimum, should transfer this case to the Northern District.  Notably, the average time to trial in the Northern District is 19.3 months, nearly six (6) months less than in this District.  For the reasons discussed above, venue is most appropriate in Arizona and Florida, but if this Court chooses not to transfer the cases to those jurisdictions, or dismiss the claims outright for lack of personal jurisdiction, then venue should be transferred to the Northern District of Texas, at a minimum.

**VI.    CONCLUSION**

For the foregoing reasons, Weber's claims should be dismissed because this Court lacks personal jurisdiction over the Defendants.  If, however, the Court declines to dismiss the case for lack of personal jurisdiction, then the claims against Vaughn should be severed from the claims

against the Arizona Defendants and transferred to the Southern District of Florida.   The remaining claims against the Arizona Defendants should be transferred to the District of Arizona. Finally, while Weber has waived its right to enforce the forum selection clause, Defendants have not and, at a minimum, this entire case should be transferred to the Northern District if not dismissed entirely or severed and transferred to Florida and Arizona.

Dated: December 10, 2012.

Respectfully submitted,

SNELL & WILMER L.L.P.


By:  __/s/ Joseph A. Kroeger_____
Jeffrey Willis (Admitted pro hac vice)
Joseph A. Kroeger (Admitted pro hac vice)
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
Telephone:  520.882.1200
Facsimile:  520.884.1294
Attorneys for Defendants Vikram
Krishnamurthy, Moumita Roy, and
Antonio Ventorini.

_____

-and-


AKERMAN SENTERFITT, L.L.P.


By:___ /s/ D. Stewart Clancy_____
D. Stewart Clancy, SBN: 24027926
2001 Ross Avenue, Suite 2550
Dallas, Texas  75201
Telephone:  214.720.4300
Facsimile:  214.981.9339
Attorney for Defendant Ryan Vaughn

## CERTIFICATE OF CONFERENCE

Undersigned counsel for Vikram Krishnamurthy, Moumita Roy, Ryan Vaughn, and Antonio Ventorini ("Defendants") certifies that on December 6, 2012, counsel for Defendants conferred with Michael A. McCabe and S. Wallace Dunwoody, counsel for plaintiff Weber Aircraft, L.L.C., and counsel for Weber Aircraft. L.L.C. is opposed to Defendants' Motion to Sever and Transfer.

_/s/  D. Stewart Clancy_
D. Stewart Clancy

_/s/ Jeffrey Willis_
Jeffrey Willis

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2012, a true and correct copy of the foregoing was served via certified mail, return receipt requested, as follows:

Michael A. McCabe
S. Wallace Dunwoody
Munck Wilson Mandala, LLP
12770 Coit Road, Suite 600
Dallas, TX 75251
_Attorney for Plaintiff_

_/s/  D. Stewart Clancy_
D. Stewart Clancy