**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

WEBER AIRCRAFT, L.L.C.,          §
                                §
          Plaintiff             §
                                §
     v.                         §          Case No. NO. 4:12-cv-00666-RC-ALM
                                §
VIKRAM KRISHNAMURTHY,           §
MOUMITA ROY, RYAN VAUGHN and    §
ANTONIO VENTORINI,              §
                                §
          Defendants.           §
                                §

**DEFENDANT, RYAN VAUGHN'S MOTION FOR
SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to the Court's Order [D.E. #41], Fed. R. Civ. P. 56 and Local Rule CV-56, Defendant Ryan Vaughn ("Vaughn") hereby files this Motion for Summary Judgment and Incorporated Memorandum of Law.

## I.      INTRODUCTION

Plaintiff Weber Aircraft, L.L.C., now known as Zodiac Seats, U.S. ("Weber"), filed suit against four of its former employees, Vaughn and Co-Defendants, Vikram Krishnamurthy ("Krishnamurthy"), Moumita Roy ("Roy") and Antonio Ventorini ("Ventorini") (collectively, the "Former Employees" of "Defendatns"), alleging breaches of their respective, identical Invention and Confidentiality/Non-Compete Agreements (the "Agreement(s)"), which they were required to sign during or prior to commencement of employment (the "Action").  Plaintiff seeks compensatory (Count II) and injunctive (Count II) relief in its Amended Complaint (the "Complaint").

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 1 of 33**
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

Defendants all left their employment with Weber between January 2012 and April 2012 and currently work for B/E Aerospace ("B/E"), with Vaughn at the Medley, Florida facility and the Co-Defendants at the Tucson, Arizona facility.   The Agreements signed by the Defendants include purported one (1) year non-compete and non-solicitation restrictions after termination of employment.   The Agreements are unenforceable as a matter of law because:

- The provisions of the Agreement are overbroad and not otherwise supported by legitimate business reasons;

- Plaintiff has selectively enforced the Agreement with other former employees;

- Plaintiff cannot demonstrate that Vaughn is competing with Plaintiff or using its confidential information in his job with B/E; and,

- Plaintiff cannot demonstrate that Vaughn solicited its employees or customers.

Furthermore, even if Plaintiff could demonstrate that the Agreements are valid and that Vaughn breached his Agreement, Plaintiff is not entitled to any compensatory or injunctive relief because the time period has expired for enforcement of the restrictive covenants and it has suffered no monetary damages as a result of Vaughn's actions.

## II.   <u>ISSUES PRESENTED</u>

A.   Does the Non-Compete And Non-Solicitation Provisions Contained In The Agreement  Contain "Limitations As To Time, Geographical Area, And Scope Of Activity To Be Restrained That Are Reasonable And Do Not Impose A Greater Restraint Than Necessary To Protect The Goodwill Or Other Business Interest?"

B.   Even If the Agreements Were Valid, Did Vaughn Breach the Agreement?

C.   Even If the Agreements Were Valid, Did Weber Waive Its Right To Enforce The Restrictive Covenants Through Selective Enforcement With Former Employees?

D.   Is Weber Prevented From Seeking To Enforce The Non-Compete And Non-Solicitation Provisions Contained In The Agreement Due To Mootness?

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 2 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

### A.   Vaughn's Employment At Weber

**1.**     Vaughn began working for Weber in Gainesville, Texas on January 24, 2011. [Ex. I (Admissions); Ex. C (Vaughn Dep.) 11:12-15].  Vaughn was hired as a certification engineer.  [Ex. C 25:11-18; Ex. D (Reeves Dep. I) 82:22-24].  Upon commencement of work at Weber, Vaughn signed the Agreement.  [Ex. A (Agreement); Ex. C 36:11-21; Ex. I].

**2.**     There are three engineering groups at Weber: product development, design engineering, and certification engineering.  [Ex. C 22:8-17].  The certification group at Weber takes the final seat product from either the design or product development groups and ensures that the product meets the Federal Aviation Administration's ("FAA") regulations and the airplane manufacturer's specifications, so it can be installed on an aircraft.  [Ex. C 23:10-16; Ex. D 65:17-66:10; 85:18-86:1].  Vaughn worked in the certification group.  [Ex. D 77:21-24].

**3.**     While still employed at Weber, Vaughn applied to other companies for employment.  [Ex. C 61:15-20].  Vaughn, who is originally from Florida, narrowed his search to facilities in Florida because he did not want to live elsewhere.  [Ex. C 63:23-64:10].  Vaughn applied to B/E for a certification engineer position in Medley, Florida in the Fall of 2011.  [Ex. H (Application to B/E)].  Vaughn eventually resigned on January 24, 2012 and went to work for B/E in Florida as a certification engineer.  [Ex. I; Ex. C 11:16-12:1].

### B.   Vaughn's Employment As A Certification Engineer

**4.**     Every seat supplier's end product must meet the requirements of the FAA.  [Ex. D

---

[1]  Plaintiff may argue that equitable tolling is appropriate in this case.  However, there are no facts supporting a basis for equitable tolling.  In the event that Plaintiff presents facts for equitable tolling, Defendant Vaughn will respond in his reply brief.

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 3 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

187:1-2].  Within the aerospace industry, there are certain published guidelines that establish industry-wide standards.  [Ex. D 70:9-11].  For example, the Society of Automotive Engineers, or SAE, establishes standards within the aerospace industry, and everyone in the aerospace industry has access to the SAE-generated information.  [Ex. D 70:9-11; 234:13-21]. Additionally, airplane seats must receive a Technical Standard Order ("TSO") demonstrating that the seat is certified according to the FAA's regulations.  [Ex. D 190:18-21; Ex. T].  Weber, like other manufacturers, submits its certification plans to the FAA, and when it does so, those plans are no longer "a secret."  [Ex. D 203:20-25].  When the plans go to the FAA, they are public knowledge and are available to the public.  [Ex. D 204:8-10; 205:21-23; *see* Ex. R (Certification Plan)].

**5.**     To certify seats, there are various tests performed, including flammability tests, static tests and dynamic tests.  [Ex. D 60:13-18; 97:21-25].

**6.**     All new materials installed, including upholstery, must have qualification data, which consists of flammability testing data.  [Ex. C 42:20-43:8].  The upholstery must be shown to meet a specific flammability regulation. *Id.*  The tests for flammability are vertical burn tests, oil burn tests or specific cushion build-up tests. *Id.*

**7.**     Vertical burn tests are governed by 14 C.F.R. §25.853(a).  Appendix F to Part 25 outlines in great detail the material test criteria and gives all certification engineers instructions on performing these standardized tests.  [*Id.*; Ex. C 43:14-25; Ex. Q (Appendix F)].  The vertical burn test is performed the same way each time because it is a standardized test. *Id.*  The oil burn tests use complete replications of the cushion material to dress covers, either cloth or leather, and any other materials that were used to manufacture the cushions.  [Ex. C 44:1-10].  The

requirements for the vertical burn and oil burn tests are the same for everyone in the aerospace industry.  [Ex. D 182:5-16].

8.      A static test plan is a plan that details how the seat will be tested for static structural qualification. [Ex. D 98:3-6].  Static tests are governed by FAA regulations.  *See* 14 C.F.R. §25.561.

9.      The dynamic testing is the same for everyone in the aerospace industry.  [Ex. D 182:18-23; *see* 14 C.F.R. §25.562].  For example, delethalization testing is a dynamic test done by everyone in the industry because it is a requirement for the aircraft.  [Ex. D 273:14-21].

### C.      Differences in Vaughn's Work at B/E Versus Weber

10.      Vaughn certified tourist class and business class seats at Weber, specifically Models 5751 and 7800.  [Ex. D 90:9-15; 90:23-25; Ex. E (Reeves Dep. II 162:12-17].  During his time at Weber, Vaughn was tasked with the certification of seats that were installed on customer's aircrafts.  [Ex. C 42:1-19].  The seats that Weber manufactured did not require new testing, except for flammability testing.  *Id*.  The seats were already structurally qualified, and the only change was with the upholstery.  *Id*.  Vaughn <u>only</u> certified seats at Weber through comparison by similarity with seats that already had been certified.  *Id*.

### *Vaughn Performed Flammability Tests At Weber, But Does Not at B/E*

11.      Vaughn wrote test plans and collected data from the test lab for flammability testing at Weber.  [Ex. D 95:1-10].  Vaughn only performed vertical burn tests at Weber.  [Ex. C 171:6-10].  Vaughn does not perform any flammability tests in his position at B/E.  [Ex. C 106:4-18].

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 5 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

***Vaughn Did Not Perform Static and Dynamic Tests At Weber, as He Does at B/E***

**12.**    At Weber, Vaughn worked on an existing seat model that had been used and qualified for earlier projects.  [Ex. C 42:1-19]  As such, Vaughn used prior test results to secure certification of aircraft seats at Weber.   [Ex. D 274:21-275:19].  This method of comparison is different from actually performing tests.  [Ex. D 276:17-22].

**13.**    At B/E, Vaughn *actually performs* structural qualification tests, including static and dynamic tests, which he did not do at Weber.  [Ex. C 170:21-23].  Every program that Vaughn works on at B/E requires him to perform these tests.  [Ex. C 171:19-23].  At B/E, instead of using previous data for seats that had already been tested to do the certification reports, Vaughn is in charge of creating and performing the tests and the test data for the certification reports.  [Ex. C 171:24-172:14].

***Vaughn works on a Different Type of Seat at B/E than he had at Weber***

**14.**    Weber's primary product is its tourist class seats.     [Ex. D 48:8-17]. Approximately 85% of the seats manufactured by Weber are tourist class seats, and the other 15% is split between first class and business class seats.  [Ex. D 48:8-17].

***Commercial Airlines vs. Private and Business Jets Clientele***

**15.**    At Weber, Vaughn only worked on programs for commercial airlines, as Weber does not manufacture products for private aircrafts.  [Ex. C 89:7-17; Ex. D 269:11-21].  Vaughn worked on economy, tourist class and business class seats for commercial airlines.  [Ex. C 166:14-23].  At B/E in Medley, Florida, Vaughn works on private jets and business jets, which are not the same as commercial jets.  [Ex. C 121:20-23].  In sum, Vaughn works for different customers at B/E than he did at Weber.  [Ex. C 119:17-120:5].

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 6 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

### *Commercial Airlines vs. Private and Business Jets Seats*

**16.**     On the business jets at B/E, the seats are highly customized for the customer.  [Ex. C 92:17-20].  The actual construction of seats on business jets, including the material used, are different from a commercial aircraft manufacturer because they are customized.  [Ex. C 94:19-23].  These seats, including special features such as side tracking and swivel tracking, are features that are not typically on commercial aircraft seats.  [Ex. C 94:5-10].  The customized seats must meet the FAA standards, and everyone in the industry uses the same standards for certification.  [Ex. C 115:14-24].

### D.     Vaughn's Inability to Use Weber's Information After Departure

**17.**     While Vaughn was exposed to *some* confidential information while at Weber, there is no evidence that he took any data with him when he left Weber.  [Ex. D 38:11-12].  Furthermore, there is no evidence of Vaughn using any of its confidential or proprietary information in his employment with B/E.  [Ex. D 43:10-21].

**18.**     Vaughn did not take or intend to use any proprietary information of Plaintiff in his employment at B/E.  [Ex. C. 88:15-18].  Vaughn performs his duties at B/E without using any of Plaintiff's confidential information.  [Ex. C 88:19-21].  Vaughn works on highly customized seats for business jets at B/E, which would make any confidential information related to Plaintiff inapplicable.  [Ex. C 92:17-20].

### E.     Vaughn's Contact with Weber Employees After Departure

**19.**     Vaughn spoke with three co-workers during his employment at Weber about his desire to leave Weber and his applying for other positions: (1) Ventorini; (2) Ahmed Mosih; and (3) Luis Palomino.  [Ex. C 141:10-15].  Each of these employees expressed an interest to

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 7 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

Vaughn about leaving Weber as well.  [Ex. C 142:12-20].  Any communication Vaughn had with these employees after he left Weber was in response to their interest to leave Weber.  *Id*.

### *Vaughn Did Not Solicit Co-Defendant Ventorini*

20.    Vaughn and Ventorini spoke about looking for outside opportunities prior to Vaughn leaving Weber. [Ex. C 160:18-19].  In these discussions, Ventorini told Vaughn that he, along with other employees, was not happy at Weber and wanted to leave. [Ex. C 161:4-6].  For example, on June 7, 2011, Vaughn told his then girlfriend in an e-mail that he engaged in a lengthy discussion with Ventorini about the pros and cons of getting a job at Aurora.  [Ex. L (Email, dated June 7, 2011)].

21.    Ventorini initially heard that B/E was hiring engineers when other colleagues left Weber to work for B/E, including Biddut Dey ("Dey") and Srinivasan Ganapathi ("Ganapathi"). [Ex. B (Ventorini Dep.) 140:24-141:3].  Based on Dey and Ganapathi's departure from Weber for B/E, Ventorini knew that B/E was looking for certification engineers.  [Ex. B 142:1-7].

22.    After leaving Weber and based on Ventorini's previous request to Vaughn to let him know of any job openings outside of Weber, Vaughn sent Ventorini an email on March 6, 2012.  [Ex. M (Email dated March 6, 2012)].  As a friend, Vaughn let Ventorini know that there were positions available at B/E because Ventorini had previously requested this information from Vaughn.  [Ex. C 149:16-25].  This email was not the first time that Ventorini had heard that B/E was looking for certification engineers.  [Ex. B 140:8-10].

23.    On March 23, 2012, Vaughn emailed Ventorini and informed him that another certification engineer position had been posted on B/E's website.  [Ex. B 144:25-145:4].  Ventorini already knew about this certification position because his wife told him that B/E was looking for certification engineers on March 20th.  [Ex. B 145:8-17].  Ventorini's wife sent him

{27052709;2}

the job posting for a certification engineer because she knew about the turmoil and lack of compensation that Ventorini was getting at Weber and knew that he was looking to leave.  [Ex. B 22:8-23:6].  Despite this fact, Ventorini still asked Vaughn to give his resume to Vaughn's boss.  [Ex. C 152:8-10].

24.     By March 2012, Ventorini was in the process of pursuing another job with the help of a placement agency.  [Ex. B 145:22-24].  Ventorini wanted to leave Weber and was applying to several positions.  [Ex. C 160:11-13].  With the help of a recruiter at a placement agency, not Vaughn, Ventorini got a phone interview with B/E Tucson, which eventually led to his current position.  [Ex. B 147:8-148:16].

### *Vaughn Did Not Solicit Mosih*

25.     Mosih is an electrical engineer at Weber.  [Ex. C 141:16-19].  Vaughn told Mosih that he was going to work for B/E shortly after Vaughn received his offer from B/E, but before he resigned from Weber.  [Ex. C 143:10-16].  Mosih had expressed to Vaughn his own interest in looking for other employment opportunities.  [Ex. C 141:2-9].  He also asked Vaughn to let him know if there were any opportunities available.  *Id*.  Vaughn later received an email from Mosih in April 2012, where Mosih attached his resume.  [Ex. S (Email from Mosih)].

### *Vaughn Did Not Solicit Palomino*

26.     Palomino was a certification engineer at Weber.  [Ex. C 141:20-22].  Vaughn spoke to Palomino about Palomino's desire to leave Weber before Vaughn left Weber.  [Ex. C 142:12-20; 143:17-23].  Palomino sent Vaughn his resume unsolicited within weeks of Vaughn's departure.  [Ex. N (Email dated February 6, 2012)].  Palomino told Vaughn to share his resume with Vaughn's contacts and stated that he had gone through the B/E job openings and did not find a position for a certification engineer in Florida.  *Id*.  In response, Vaughn informed

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 9 of 33**
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

Palomino about other opportunities for Palomino to research.  [Ex. O (Email dated February 15, 2012)].  Vaughn did not solicit Palomino to leave Weber.  [Ex. C 142:12-20; 143:17-23].

F.   **Weber's Lack of Enforcement of Restrictive Covenants Against Other Employees**

27.    At Weber, it was mandatory for the certification engineers to sign the Agreements.  [Ex. G 79:18-23].  Before Vaughn left Weber's employment to join B/E, Ganapathi and Dey had left Weber to work for B/E.  [Ex. C 172:19-24].  Weber has not filed suit against either of these employees, nor accused them of violating the restrictive covenants they signed while employed with Weber.  [Ex. C 172:19-24; Ex. F (Rojas Dep.) 314:21-23; 315:9-316:2].  Ganapathi now works at Recaro, and Dey still works at B/E Tucson.  [Ex. C 173:15-21].

28.    Vaughn works with another former Weber employee at the B/E facility in Medley, Florida, Yareli Valdez ("Valdez.").  [Ex. C 158:1-5].  Valdez was a quality engineer when she worked at Weber.  [Ex. C 158:6-17].  She left her position at Weber after Vaughn left in 2012.  [Ex. C. 158:20-24].  She is the only other former Weber employee who works at the same B/E facility as Vaughn.  [Ex. C 159:1-5].  As with Dey and Ganapathi, Weber has not sued Valdez for violating the restrictive covenants in her Agreement with Weber, nor attempted to enforce same.  [*See* Ex. F 294:11-295:14].

29.    There are several former employees of Weber who currently work for another manufacturer/seller of airplane seating, Recaro, that was specifically identified in the Agreement as being prohibited.  [Ex. F 294:11-295:10].  Recaro is considered by Weber to be a direct competitor of Weber.  [Ex. F 305:15-17].  Theses former employees who currently work for Recaro include: Kazi Murtaza ("Murtaza"), Faisal Mosharrof ("Mosharrof"), Edward Pauly ("Pauly") and, now, Ganapathi.  [Ex. C 126:8-18; Ex. F 294:11-20, 295:3-10].  Murtaza and

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 10 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

Faisal were certification engineers at Weber, and Pauly was a senior manager in the design engineering group.  [Ex. F 295:16-22].  Each of these employees signed an identical version of the Agreement while they worked for Weber.  [Ex. P (Demand Letters)].

30.     Weber knew at the time Pauly resigned that he was going to work for Recaro. [Ex. F 301:9-13].  Weber's management spoke with Pauly about the non-compete before he left. [Ex. F 301:16-19].  Weber considers Pauly's employment with Recaro to be a violation of the same restrictive covenants that Weber seeks to enforce against Vaughn and the other Defendants. [Ex. F 302:13-18].  Even after Weber sent Pauly a cease and desist letter, Pauly has continued to work for Recaro.  [Ex. F 302:19-303:3].  Weber has not filed any litigation to enforce the restrictive covenants Pauly signed.  [*See* Ex. F 303:17-23].

31.     Murtaza and Mosharrof are currently working as certification engineers for Recaro, which is the same position they held at Weber.  [Ex. F 305:22-306:3].  Murtaza and Mosharrof worked in the same certification department as the Defendants at Weber.  [Ex. F 306:14-21].  All of these employees who went to Recaro received the same training and information in Weber's systems and processes as Defendants in this case.  [Ex. F 306:22-307:2]. Weber has not filed any litigation to enforce the restrictive covenants Murtaza and Mosharrof signed.  [*See* Ex. F 303:17-23].

32.     John Turner ("Turner") worked for Weber as the Vice President of Engineering. [Ex. F 319:12-17].  Turner signed the same Agreement as Defendants.  [Ex. F 319:18-20]. Turner currently works for Odyssey Aerospace Components ("Odyssey") in Denton, Texas. [Ex. K (Press Release for John Turner)].  Odyssey specializes in design engineering, manufacturing and quality fit and finish of custom turn-key cabinetry solutions, and supplies interiors and cabinetry for Boeing Business Jets, Airbus, and other aircraft manufacturers.  [Ex. K].  Despite

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 11 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

knowing that Turner works for Odyssey, Weber has not sought to enforce the Agreement against

Turner.  [Ex. F  320:2-4].

### F.      **Weber's Lack of Evidence of Damages**

**33.**      As of July 26, 2013, the date of Weber's corporate representative deposition, more

than a year after Weber sent Defendants cease and desist letters, Weber had no evidence that

Defendants' conduct caused: (1) irreparable harm to Weber's business; (2) loss of business; (3)

loss of goodwill; (4) loss of competitive position in the marketplace; or (5) confusion of

customers.[Ex. D 161:7-162:13]

**34.**      Additionally, as of that date, Weber had no evidence that Defendants' conduct

would cause irreparable harm, loss of business, loss of goodwill, loss of competitive position, or

customer confusion in the future. [Ex. D 162:23-163:18].

## IV.   **STANDARD**

"Summary judgment is warranted if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that

the movant is entitled to judgment as a matter of law." *Duval v. N. Assur. Co. of Am.*, 722 F.3d

300, 303 (5th Cir. 2013) (citations omitted).  "Rule 56 must be construed with due regard not

only for the rights of persons asserting claims and defenses that are adequately based in fact to

have those claims and defenses tried to a jury, but also for the rights of persons opposing such

claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the

claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 12 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

## V.    ARGUMENT AND AUTHORITIES

**A.    The Non-Compete And Non-Solicitation Provisions Contained In The Agreement  Do Not Contain "Limitations As To Time, Geographical Area, And Scope Of Activity To Be Restrained That Are Reasonable And Do Not Impose A Greater Restraint Than Necessary To Protect The Goodwill Or Other Business Interest."**

### 1.    Non-Competition and Non-Solicitation Provisions[2]

"The [Covenants Not to Compete] Act states that a covenant is enforceable if it is 'ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.'" *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 658 (Tex. 2006) (quoting Tex. Bus. & Com. Code §15.50(a)); *Olander v. Compass Bank and Compass Banc-Shares, Inc.*, 363 F.3d 560, 564 (5th Cir. 2004) (same).  Plaintiff must present evidence demonstrating that the restraint: (1) protects a legitimate business interest; (2) is reasonable in time; (3) is reasonable in geographic area; and (4) is in reasonable in scope.  Here, the restrictive covenants contained in Agreement fail because they impose a greater restraint than is necessary and are not reasonable in time, geographic area or scope.

a.    *The Agreement Imposes A Greater Restraint Than Necessary To Protect The Goodwill And Other Business Interests Of Plaintiff.*

---

[2] Several Texas Courts have subjected non-solicitation covenants to the same legal analysis and burdens of proof as covenants not to compete because of their similar purpose and effect.  *See, e.g., Shoreline Gas, Inc. v. McGaughey,* 2008 WL 1747624, at *9 (Tex. App.-Corpus Christi 2008, no pet.); *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 600 (Tex. App.-Amarillo 1995, no writ).  As such, we analyze them together.

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 13 of 33**
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

Covenants not to compete are restraints of trade, and unenforceable as a matter of public policy unless they are reasonable. *See John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 85 (Tex. App.-Houston 1996, writ denied); *see* Tex. Bus. & Com. Code Ann. § 15.50(a); *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 774 (Tex. 2011) (goodwill, trade secrets and other confidential and proprietary information, can be a protectable business). To be enforceable, a covenant not to compete must protect the goodwill or other business interest of the employer. Tex. Bus. & Com. Code §15.50(a). "Unreasonable limitations on employees' abilities to change employers or solicit clients or former co-employees, i.e., compete against their former employers, could hinder legitimate competition between businesses and the mobility of skilled employees." *Marsh USA, Inc.*, 354 S.W.3d at 769. "Restraint on trade for its own sake is not a protectable 'business interest' under Section 15.50, any more than violations of employee wage, hour, or safety laws are legitimate business interests that can be protected through a restrictive covenant." *Id.* at 784 (J. Willis, concurring).

The Agreement <u>broadly</u> defines confidential information to include: (a) financial information, (including prices, fee structures, volumes of purchases or sales, or other financial data); (b) product information (including designs, prototypes, engineering information, studies, and drawings); (c) supplier information (including names and addresses of suppliers, terms of supply agreements); (d) marketing information (including but not limited to details about ongoing or opposed marketing programs or agreements, marketing forecasts, results of marketing efforts or information about impending transactions and pricing strategies); (e) personnel information; (f) information contained in any computer files; (g) procedures manuals, startup manuals, sales training materials, brochures, customer agreements, license agreements, shareholders agreements, minutes of shareholder meetings, minutes of manger's meetings, sales

{27052709;2}

meetings; (h) customer information (including names, addresses and contacts, any compilations

of past, existing or prospective sources of business with customers, and sale histories, pricing or

other revenue information relating to customers); and (i) all information acquired by the

employee in in connection with his employment that is either identified as proprietary by

Plaintiff or based on the circumstances, ought to be treated as proprietary information of

Plaintiff.  Ex. A.

In an effort to demonstrate that Defendant retained and is using confidential and

proprietary information in violation of the Agreement--which it must do to avoid entry of

summary judgment--Plaintiff asserts that Defendant's general knowledge of Weber processes

that he retained, which falls under the "catch-all" category (i) of the Agreement, is a violation.[3]

[*See* Ex. D 224:24-225:15; Ex. F 309:25-310:11].  This argument fails for two reasons:  (1) the

general knowledge retained by Defendants is public information; and (2) any information

specific to Plaintiff is not applicable to any job responsibilities that Defendant performs for B/E

because they are performing different duties and working on different products.

First, the general knowledge that each Defendant has relates to performing certification

tests, analyzing data, and ensuring that various products meet the publicly available FAA

regulations.  Obviously, there is nothing secret about the FAA regulations.  In fact, one can

---

[3]   Texas does not recognize the inevitable disclosure doctrine. *See e.g. Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 242 (Tex. App. 2003, no pet.) ("We have found no Texas case expressly adopting the inevitable disclosure doctrine, and it is unclear to what extent Texas courts might adopt it or might view it as relieving an injunction applicant of showing irreparable injury."); *see also M-I, L.L.C. v. Stelly*, 2009 WL 2355498, *7 (S.D. Tex. 2009).  The non-compete provisions improperly assert that, by merely working for a competitive business, the employee "agrees . . . such action will inevitably result in the disclosure of Confidential Information in violation of the Agreement."  This attempt to bootstrap the inevitable disclosure doctrine into a contractual agreement is not only an inaccurate proposition on its face, but it should be viewed by any Court as inherently overreaching on the part of Weber.

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 15 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

simply go to the internet from any computer in the world and see the very regulations that Weber now seeks to associate with a confidential and proprietary interest.   *See* http://standards.sae.org/aerospace/tests-testing/standards/current/.   The reality is that EVERY manufacturer has to ensure that its products comply with these publically available specifications.   Weber's own corporate representative testified as follows:

> Q.   Tell me how you think the certification process is – at Weber of ensuring compliance with the same guidelines that every other manufacturer has to comply with is proprietary.
>
> A.   The – the test requirement is the same, 25.8 – 853, you know, the – the flammability requirements are the same.  They – if you certify to that, you know, it must meet the – the Bunsen burner test, you know; it must meet the oil burn requirements.   That particular requirement is the same.   How you meet that requirement, as in the materials that are used, the combinations of materials that are used to get to those requirements are – are very proprietary, very confidential.

[Ex. D 178:8-21].

Weber's corporate representative testified that these tests are common in the industry.  *Id.* Further, Vaughn testified that he does not and cannot use any of Weber's confidential information in his work at B/E because he works on different products than he did at Weber.  *See* Undisputed Facts, ¶¶17-18.   As such, any knowledge of Weber's structural testing of seats, to which he had no participation, is completely useless in his current work.  *Id.*  Plainly, Plaintiff's claim that the process of getting a material to meet a general government standard is worth of protection is simply wrong.   Knowing how to perform these tests in certifying items in the aerospace industry is general information available from the FAA.  *See* Undisputed Facts, ¶¶4-9. For example, how to perform a flammability test is a standardized test in the aerospace industry and, therefore, not confidential and proprietary information of Weber.  *See Contract Datascan,*

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 16 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

*LP v. Regis Corp.*, 2011 WL 2413210, at *2-3 (N.D. Tex. June 15, 2011) (noting the difficulty in differentiating what was exclusively the former employer's information from what is available publicly or as an industry standard for trade secret purposes in denying the motion for preliminary injunction). *See* Ex. D 178:8-21; 179:12-24.  Here, it is plain that this information is not specific to Weber because it is public and governed by the FAA's regulations.  *Id.* Additionally, it is undisputed that the actual certification plan that Weber sends to the FAA may be obtained under the Freedom of Information Act ("FOIA").  *See* Ex. D 193:20-194:1; 195:22-196:3.  Certainly, Weber cannot claim that any information which may be obtained by a member of the public under FOIA maintains any notion of confidentiality.

Weber cannot support that the general knowledge of performing certification tests is in fact, confidential and proprietary information and, therefore, a protectable legitimate business interest.  *See Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 426 (S.D. Tex. 2008) (finding that the investigative methods, report formats and operation manuals of the employer, a forensic engineering contractor, were not confidential, proprietary or trade secret information because they are given to clients who disseminate them and end up in the public record when used in pursuing or defending litigation); *Lawfinders Assocs., Inc., et al. v. Legal Research Center, Inc.*, 65 F. Supp. 2d 414, 419 (N.D. Tex. 1999) ("Nevertheless, courts have refused to give material or a procedure trade secret protection when that which is sought to be protected has been publicly disclosed.") (citation omitted); *Cataphote Corp. v. Hudson*, 444 F.2d 1313, 1315-16 (5th Cir. 1971) ("Where a process or idea is so common, well known, or readily ascertainable that is lacks all novelty, uniqueness and originality, it necessarily lacks the element of privacy necessary to make it legally cognizable as a trade secret."); *see also The Osler Institute, Inc. v. Forde*, 333 F.3d 832, 838 (7th Cir. 2003) (finding that some information learned

{27052709;2}

by the former employee who previously worked for the employer, a test preparation company, was a matter of public knowledge and, therefore, not protectable information subject to a non-compete agreement).  Information regarding certification tests for seats is in no way confidential or proprietary information belonging to Weber because it is out in the public.  How to perform such tests are governed by the FAA's regulations and general knowledge in the aerospace industry.   Plaintiff's corporate representative admitted the FAA requirements are public knowledge.  [Ex. D 176:22-24].  Because these requirements are public, Plaintiff has no basis to claim that Defendants' knowledge of these requirements is a protectable business interest.

Second, Plaintiff contends that the way its certification engineers discuss prior design failures with the design team at Weber gives B/E an unfair advantage.  *See* Ex. D 222:23-223:4.  The fact that a certification engineer may test a product, encounter a failure, and then discuss the issue with the design engineer is not confidential, proprietary or trade secret information.  This process is what each certification engineer must do throughout the industry to meet the FAA regulations for certification.  This process is not new in the aerospace industry.  *Cf. Lawfinders Assocs.*, 65 F. Supp. 2d at 419 ("When money and time are invested in the development of a procedure that is based on an idea that is not new to a particular industry, and when that procedure is not generally known, trade secret protection will exist.") (citing *K&G Oil Tool & Serv. Co. v. G&G Fishing Tool Servs.*, 314 S.W.2d 782, 785-86 (Tex. 1958)).  Further, Vaughn did not receive any specialized training while at Weber on the certification process.  [*See* Ex. C 109:12-17, 110:1-7].  As such, labeling this "interactive process" as confidential and proprietary information is overbroad.  The general knowledge of certification tests, how to perform them and how to interact with other engineers to ensure certification of a product for the FAA is not a legitimate business interest that should be protected to prevent Defendant from obtaining other

{27052709;2}

gainful employment in his field.  *See, e.g. Cataphote Corp. v. Hudson*, 444 F.2d at 1315. (To be protectable, ". . . it must possess at least that modicum of originality which will separate it from everyday knowledge.").  Further, Vaughn testified that he does not and cannot use Weber's confidential and proprietary information because he works on entirely different products at B/E than he did at Weber.  *See* Undisputed Facts, ¶¶14-16, 18.

> b.     *The Agreement is not Reasonably Limited in Scope.*

"Texas law does . . . mandate that a geographical limitation cannot impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer." *Cobb v. Caye Publishing Group, Inc.*, 322 S.W.3d 780, 785 (Tex. App. – Fort Worth 2010, no pet.); *General Devices, Inc. v. Bacon*, 888 S.W.2d 497, 504 (Tex. App. – Dallas 1994, no writ) (finding that a non-compete was unreasonable where it contained no geographical or time limitation).  Texas courts have repeatedly struck down covenants not to compete for failure to include a geographic limitation under Tex. Bus. & Comm. Code § 15.50(a).  *See, e.g., Goodin v. Jolliff*, 257 S.W.3d 341, 351-52 (Tex. App.—Fort Worth 2008, no pet.); *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 663 (Tex. 1990).

Here, the geographic scope of the restrictive covenant is defined as "the geographic area where the Company's products are sold within the two year period prior to Employee's departure from the Company and the geographic area where B/E Aerospace, Recaro, TIMCO Aviation Services, ZIM Flugsitz, and Geven conduct business." Ex. A, ¶8.  This provision is overbroad because it includes areas where other aerospace manufacturing companies – *AND NOT WEBER* – sell products.  Weber's suggestion that it somehow gains the right to protect geographic areas in which it does not sell products is absurd.

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 19 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

In lieu of a properly restricted geographical scope, Texas allows for restrictions related to customers with whom the employee interacted.  *See Staples, Inc. v. Sandler*, 2008 WL 4107656, at *5 (N.D. Tex. 2008) (reforming a non-compete for a salesman to only prevent contact with clients on accounts that he developed at employer rather than all clients of the employer).  A post-employment, non-compete provision, however, is unreasonable as a matter of law where it restricts competition as to <u>customers with whom the employee had no dealings while he was employed by the employer</u>.  *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App. – Houston 2009, pet. denied) ("A restrictive covenant is 'overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment.") (citing *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. – Houston 1996, pet. denied)); *Staples, Inc. v. Sandler*, 2008 WL 4107656, at *5 (N.D. Tex. 2008) (reforming a non-compete for a salesman to only prevent contact with clients on accounts that he developed at employer rather than all clients of the employer); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386-88 (Tex. 1991) (finding that an industry-wide exclusion or exclusion from clients with whom the employee had no contact are unreasonable but restricting an employee's contacts with former clients may be reasonable).

In the Agreement, there is no restriction that Defendants cannot solicit or interact with former customers with whom they serviced at Weber.  In the Agreement, the restriction that Defendants cannot interact or solicit customers is not limited only to customers they serviced at Weber.  Rather, the restriction is unlimited and applies to all of Weber's clients.  Because there is no reasonable geographic scope and a complete absence as to any restriction to Defendants' interactions with former customers and clients, the restrictive covenants contain an unreasonable geographical scope.

{27052709;2}

Additionally, the Agreement states, "Employee will not provide information to, solicit or sell for, organize or own any interest in (either directly or through any parent, affiliate, or subsidiary corporation, partnership, or other entity), or become employed or engaged by, or act as an agent for any person, corporation, or other entity that is directly or indirectly engaged in a Competing Business within the Restricted Territory."  Ex. A, ¶8.  According to paragraph 8 of the Agreement, Defendants cannot work for any "competing business" in any capacity.  "The term 'Competing Business' for purposes of this Agreement means concept, development, design, prototyping, analysis, test, certification, manufacture and sale of seating system, seating products and any sub components of the seating system and/or product for transport airplane and rotorcraft, including, but not limited to B/E Aerospace, Recaro, TIMCO Aviation Services, ZIM Flugsitz, and Geven."  In short, _any work_ for any of the named entities is considered by Weber competing with Weber.  Fatal to its claim, Texas law does not allow for such overbroad and blanket restrictions on trade.

In _Transperfect Translations, Inc. v. Leslie_, 594 F. Supp. 2d 742 (S.D. Tex. 2009), the plaintiff filed suit against a former employee who provided translation services claiming breach of a covenant not to compete. _Id_.  745.   The defendant spent the majority of his time while employed by the plaintiff selling e-Learning product in various states across the country and internationally.  _Id_. at 746-7.  The defendant later moved to Houston and was promoted to the Director of Business Development and was responsible for the regional market, but also continued his e-Learning marketing and sales responsibilities.  _Id_. The defendant eventually resigned and joined a competitor of the plaintiff to sell its products from Chicago. _Id_. at 747-48. The defendant was involved in sales in the Life Sciences and e-Learning markets for the new employer. _Id_. at 748.

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 21 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; _Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al._

The Court considered whether the agreement was reasonable in scope.  *Id*. at 753.  "[The employer's] non-compete covenant requires [the employee] to refrain from competing with the [employer's] business in any activities involved in the provision of goods or services in competition with the business with respect to products and services that are competitive with the products and services of the [employer's] business."  *Id*.  The Court found that the agreement was extremely broad in scope because <u>the type of work in which the employee could not engage was not defined</u>.  *Id*. at 755 ("The Agreement prohibits [the employee] from competing with [the employer] in any activities involved in the provision of goods or services in competition with the business.  The terms of that clause are not defined.").  Ultimately, the Court found that non-compete agreement was unreasonable in both geographic area and scope of activity.  *Id*.

The scope of Vaughn's Agreement is similarly unreasonable.  First, Vaughn is working on different products in a market that Weber <u>admittedly</u> does not manufacture: private and Business Jets. Undisputed Facts, ¶¶14-15.  While at Weber, Vaughn only worked on seats for planes for commercial airlines.  Undisputed Facts, ¶14. These seats are vastly different than the ones on which he works for B/E due to the highly customized nature of B/E's products for business jets.  Undisputed Facts, ¶¶14-16.  Second, Vaughn is performing work for B/E that he did not perform at Weber. Undisputed Facts, ¶¶10-13.  Vaughn performs no flammability testing, nor does similarity reports (as he did at Weber) where he compared seats to previously certified seats for certification. Undisputed Facts, ¶¶10-11.  Instead, Vaughn's responsibility is to create test plans, perform structural tests and analyze data from those tests, including static and dynamic tests.  This work is completely different from that which he performed at Weber. Undisputed Facts, ¶¶12-13.  As such, the scope of the restraint is unreasonable.  *See Marinelli v. Medco Health Solutions, Inc.*, Case No. 3:13-cv-199 (MPS), at*12 (D. Conn. June, 13, 2013)

{27052709;2}

(noting that although the employee held a similar job title with the new employer, he performed different duties in his new position, and thus, the restrictive covenants barring employment with a competitor was unreasonable).  Further, Plaintiff has no evidence that, even if the Agreement were reasonable (which is denied), Vaughn has solicited its customers or employees, nor used its confidential information in his new employment at B/E.

> c.    *Even If The Agreement Were Valid, Weber Cannot Support Its Claim of a Legitimate Business Reason As It Has Waived Its Right To Enforce The Restrictive Covenants Of The Agreement Through Its Selective Enforcement With Other Former Employees.*

Even if this Court were to determine that Plaintiff's Agreement is valid and enforceable, Plaintiff waived any right to enforce the Agreement due to its selective enforcement.  "Under Texas law, '[t]he elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct).'" *Singha v. BAC Home Loans Servicing, LP, et al.*, 2012 WL 3904345 (E.D. Tex. Aug. 7, 2012) (quoting *G.H. Bass & Co. v. Dalsan Properties-Abilene*, 885 S.W.2d 572, 577 (Tex. App. – Dallas 1994, no writ)).

Here, Plaintiff asserted that the Agreement is enforceable against its employees. Therefore, Plaintiff believed it had existing rights and benefits under the Agreement.  Further, Plaintiff had prior knowledge of the rights and benefits under the Agreement.  Despite this knowledge, Plaintiff has relinquished its purported rights and benefits under the Agreement because it waived the ability to enforce the Agreement against several former employees.

In Texas, there are two ways in which a party may show that another party has waived its right to enforce an agreement: actual intent and inferred intent.  *See G.H. Bass & Co.*, 885 S.W.2d at 577 ("The law on waiver distinguishes between a showing of intent by actual

{27052709;2}

renunciation and a showing of intent based on inference."); *Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) ("'A party's express renunciation of a known right can establish waiver.  Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver.'") (quoting *Teneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)).

> d.     *Inferred Intent: Weber's Lack of Enforcement as to other B/E Employees*

To establish waiver on a non-compete provision, the employee must show that the employer's failure to enforce the non-compete provisions amounted to a complete disregard of those provisions.  *See Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 698 (D. Minn. 1986) (finding that the defendant waived its right to enforce non-compete provisions after it "blithely ignored" the provision with prior employees).

In this case, Weber is attempting to selectively enforce the non-compete provision against certain former employees who work at B/E, but not others.  First, it is undisputed that Weber never attempted to enforce the non-compete provisions of the Agreement against either Dey or Ganapathi, despite that they both left their employment with Plaintiff only months before Vaughn and went to work for B/E in Tucson. Undisputed Facts, ¶¶21, 27.   Each Defendant was aware that Dey and Ganapathi went to work for B/E, and Plaintiff had not accused these two employees of violating the non-compete provisions, nor had they sought to enforce the Agreement against them.  Undisputed Facts, ¶¶21, 27.

Additionally, Weber never attempted to enforce the non-compete provision in the Agreement against Valdez, a former employee who <u>currently works with Vaughn for B/E in Medley</u>.  Undisputed Facts, ¶28.  As such, Plaintiff is no different than the employer in *Surgidev*

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 24 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

that permitted its employees to work for other competitors.  This selective enforcement of the non-compete provision, especially as it relates to former employees who went to the same B/E facilities as Defendants, is evidence of an inferred intent to waive Weber's purported rights and benefits under the Agreement.

            *e.*      *Actual Intent: Weber's Lack of Enforcement as to Recaro Employees*

Plaintiff contends that the general knowledge that Defendants' retained after leaving the Company is the legitimate business interest that it seeks to protect.  However, Weber has openly allowed Murtaza and Mosharrof, also former certification engineers of Weber that performed the same job as Vaughn that currently work for Recaro, to continue working for an alleged "direct competitor" specifically named in the Agreement as forbidden employer, even though they possess the same knowledge as Defendant.  Specifically, Plaintiff's corporate representative testified at her deposition:

> Q:    Well, it's my understanding that it's Weber position that even though you can't identify a single actual document or item being used at B/E, it's the general knowledge in the minds of these – of the defendants in this lawsuit that is problematic.  Am I right?
>
> A:    Yes.
>
> Q:    But the same general knowledge that's in the minds of the defendants in this lawsuit are in the minds [of Murtaza and Mosharrof], because they were in the same department, of the folks that Weber is allowing to work at Recaro, right?
>
> A:    Yes

[Ex. F 309:25-310:11].

Based on this testimony, Plaintiff has waived its alleged right to enforce the Agreement through its selective enforcement with others.

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 25 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

>           *f.*     *Actual Intent:  Plaintiff's Lack of Enforcement as to John Turner*

Turner is the former Vice President of Engineering at Weber.  He left his employment at Weber in approximately April 2013 and currently works for Odyssey Aerospace.  Despite being a senior level executive that had access to the highest levels of confidential and proprietary engineering information, Weber has not sought to enforce the restrictive covenants contained in his Agreement with Weber.  [Ex. F 321:23-322:4].  Plaintiff's selective enforcement of the Agreement and its non-compete provisions undermines its need to protect a legitimate business interest.[4]

>    **B.**     **Even if the Agreement was Valid, Plaintiff is Not Entitled to Either Equitable or Monetary Relief.**

A court may award the former employer under a covenant not to compete damages, injunctive relief or both damages and injunctive relief for a breach of the agreement.  Tex. Bus. & Comm. Code Ann. §15.51(a).  Here, Plaintiff's requests both monetary damages and injunctive relief, and both requests should be denied.

>    *1.*     ***Plaintiff Is Not Entitled To Injunctive Relief Under Count II Of The Complaint Because the Term of the Non-Compete And Non-Solicitation Provisions Of The Agreement Expired.***

It is settled law in Texas that once the period for a restrictive covenant has expired, a proponent of the restrictive covenant is no longer entitled to seek to enforce the same through injunctive relief and the claim for injunctive relief is thereby rendered moot.  *See Leon's Fine Foods, Inc. v. McClearin*, 2000 WL 277135, *1 (Tex. App.— Dallas, Mar. 15, 2000, pet. denied)

---

[4]  *See Baskin Robbins, Inc. v. Patel*, 264 F. Supp. 2d 607, 612 (N.D. Ill. 2003) (In balancing the interests of the parties over a non-compete, the court noted that "the apparent history of the plaintiffs permitting others . . . to operate in former Baskin-Robbins locations, undermines plaintiffs' contention that they need relief here to send a message to potential breakaway franchisees.").

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 26 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

(injunctive relief was moot upon expiration of non-compete period).  In *Leon's Fine Foods, Inc.*, the plaintiff sought both injunctive relief and damages for an alleged breach of a restrictive covenant.  *Id*.  The court held that once the non-competition period ends, the trial court's ability to enforce the covenant by injunction became moot.  *Id*. at *1 (citing *Rimes v. Club Corp. of America*, 542 S.W.2d 909, 912 (Tex. App.—Dallas 1976, writ ref'd n.r.e.) ("The [Texas] supreme court has prescribed the law in this area to be that a court will not extend the period provided in a restrictive covenant contained in an employment contract.")).   Because the restrictive covenants' one year term has expired before the Court has issued any injunctive relief, Plaintiff's claim in Count II, requesting injunctive relief, is moot and the remedy of injunctive relief is no longer available to Plaintiff.  *Id*.  To be clear, in this case, unlike every single case in which a Texas court has allowed equitable tolling, Plaintiff never once has moved for injunctive relief prior to the expiration of the non-compete period.   Under the foregoing authority, injunctive relief is unavailable here.

In *Rimes v. Club Corp. of America*, 542 S.W.2d 909, 912 (Tex. Civ. App.—Dallas 1976, *writ ref'd n.r.e.*), the Court held that it was an error of law for the trial court to enter an injunction where the period for the restrictive covenant had expired.   "[T]he parties entered into a contract providing for a noncompetitive period following cessation of employment and such period is now past which causes the issue to become moot. Therefore, the trial court clearly abused its discretion by entering this injunctive order because C. C. A. could not possibly show a probable right of recovery upon the trial of the merits in the permanent injunction hearing." *Id.*; *see also Lance Roof Inspection Serv. v. Hardin*, 653 F. Supp. 1097, 1102 n. 6 (S.D. Tex. 1986) ("This Court cannot expand the scope of a restrictive covenant greater than the period of time recited in the covenant nor can it be extended through custom or inference."); *see also Rimkus Consulting*

{27052709;2}

*Grp., Inc.*, 255 F.R.D. at 438 (holding that an employer "cannot enforce specifically the terms of the now-lapsed covenant to compete" because the employer's right to enforce the covenant had already expired).

Likewise, in *Weatherfood Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952 (Tex. 1960), the employer sought to enforce a one-year restrictive covenant, however, the time period provided in the restrictive covenant had expired.  In holding that the restrictive time period could not be extended, the Supreme Court followed an age-old principle that courts must enforce contracts as written by the parties and cannot rewrite the contract.  *Id.*  Thus, a court cannot reform a covenant if the covenant is no longer in effect.  *See Leon's Fine Foods, Inc.*, 2000 WL 277135 at *1 (the trial court could not reform an expired covenant because it was no longer in effect, and therefore, damages were the only remedy available to plaintiff for a violation of the non-competition covenant).

2. ***Plaintiff Is Not Entitled To Monetary Damages Under Count I Of The Complaint Because Plaintiff Failed To Demonstrate Any Monetary Damages As To Any Alleged Breach Of Agreement.***

At deposition, Plaintiff only identified actual damages for costs relating to "replacement costs," which include training, immigration, agency fees, sign-on bonuses, relocations payments, background check fees, physicals and drug screenings.  [Ex. G 92:8-18; 101:7-25].  Plaintiff also contends that it should be able to recoup the costs associated with the green card processes for Krishnamurthy and Roy.  [Ex. G 99:24-100:4].   However, this argument is without merit as it is undisputed that Weber would have incurred these costs no matter where Defendants went to

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** Page 28 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

work, regardless of their Agreement. [Ex. G 102:15-18].  Outside of these costs, Plaintiff has not identified any monetary damages as a result Vaughn's alleged breach.[5]  *Id.*

Likewise, Plaintiff cannot show that it suffered <u>any</u> monetary damages through the loss of business, goodwill or clients.   Undisputed Facts, ¶¶33-34.   Indeed, Weber's corporate representative made this admission at deposition.  *Id.*  There is no evidence that Vaughn solicited customers of Weber to terminate or diminish their business relationship with Weber.  [Ex. D 153:23-154:1].  As demonstrated above, at no time did Vaughn solicit any Weber employees to leave employment with Weber. Undisputed Facts,  ¶¶19-26.  Vaughn learned that co-workers Ventorini, Palomino and Mosih wanted to leave before he received and accepted an offer from B/E. Undisputed Facts,  ¶19.  Based on his prior conversations with these employees while he was still employed at Weber, each of them reached out to Vaughn for assistance in obtaining work outside of Weber. Undisputed Facts,  ¶¶20-26.  It is undisputed that during the time period that they worked with Vaughn, and months after, each of these individuals wanted to leave Weber.  Undisputed Facts,  ¶¶19-26.  And, in any event, it is undisputed that Ventorini obtained his position at B/E through a recruiter and not through Vaughn.  Undisputed Facts,  ¶¶20-24. Therefore, Weber cannot demonstrate that any communication between Vaughn and Ventorini after Vaughn left the Company led to Ventorini leaving his employment and joining B/E and as

---

[5] Despite being fully aware of the requirements under Fed. R. Civ. P. 26 to provide a calculation of damages, Plaintiff has not done so.  Plaintiff failed to include identifiable damages in its initial disclosures and admittedly could have identified these costs on November 20, 2012.  [Ex. G 100:5-13].  Only during the July 26, 2013 deposition of Weber's corporate representative did Weber produce a spreadsheet that purportedly outlined the costs to fill each Defendant's vacant position, and amended initial disclosures in August 2013.  The deponent testified that this had been created the day or two before the deposition – over a month after submitting discovery responses following a motion to compel – yet had never been produced.  This Court should not condone such underhanded and sharp litigation conduct.  Based on the inexcusable delay, Plaintiff should not be permitted to use the spreadsheet to substantiate any claim for monetary damages in this case. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).

{27052709;2}

such, causing Weber to suffer a monetary loss. Plaintiff has no evidence of any damages relating

to Vaughn's alleged solicitation of Weber's employees.

## V.      CONCLUSION

For the foregoing reasons, Vaughn respectfully requests that this Court grant its Motion

for Summary Judgment and dismiss this case with Prejudice.

Dated: September 12, 2013.                    Respectfully submitted,

_____

AKERMAN SENTERFITT, L.L.P.

By: /s/ Arlene K. Kline_____
D. Stewart Clancy, SBN:  24027926
Clint A. Corrie, SBN: 04840300
David I. Spector *(Admitted Pro Hac Vice)*
Arlene K. Kline *(Admitted Pro Hac Vice)*
2001 Ross Avenue, Suite 2550
Dallas, Texas  75201
Telephone:  214.720.4300
Facsimile:  214.981.9339

**ATTORNEYS FOR DEFENDANT RYAN
VAUGHN**

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 30 of 33**
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 6, 2013, Defendant Vaughn, along with Co-Defendants, filed an unopposed motion to file documents under seal.   [D.E. 57].   Further, I certify that on September 12, 2013, a true and correct copy of the foregoing and supporting exhibits were electronically served upon the following at their designated addresses via U.S. mail:

> Michael A. McCabe
> Texas Bar No. 24007628
> mmccabe@munckwilson.com
> S. Wallace Dunwoody
> Texas Bar No. 24020838
> wdunwoody@munckwilson.com
> Munck Wilson Mandala, LLP
> 12770 Coit Road, Suite 600
> Dallas, TX 75251
> Telephone: 972-628-3600
> Fax: 972-628-3616
> *Attorneys for Plaintiff*

> Jeffrey Willis (*Admitted Pro Hac Vice*)
> jwillis@swlaw.com
> Joseph A. Kroeger *(Admitted Pro Hac Vice)*
> jkroeger@swlaw.com
> One South Church Avenue, Suite 1500
> Tucson, Arizona  85701-1630
> Telephone:  520.882.1200
> Facsimile:  520.884.1294
> *Attorneys for Defendants Vikram Krishnamurthy,*
> *Moumita Roy and Antonio Ventorni*

Pursuant to the Court's Order on Defendants' Unopposed Motion to File Documents Under Seal, D.E. 63, this Motion and supporting documents are being re-filed on October 15, 2013.

> */s/ Arlene K. Kline*
> Arlene K. Kline

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 31 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

## Appendix A

## SUMMARY JUDGMENT EVIDENCE

1.     Exhibit A     Invention and Confidentiality/Non-Compete Agreement signed by Vaughn on January 24, 2011.

2.     Exhibit B     Excerpts from Deposition of Ventorini taken on May 31, 2013.

3.     Exhibit C     Excerpts from Deposition of Vaughn taken on August 8, 2013.

4.     Exhibit D     Excerpts from Deposition of Kevin Reeves taken on July 25, 2013. ("Reeves Dep. I")

5.     Exhibit E     Excerpts from Deposition of Kevin Reeves taken on July 26, 2013.  ("Reeves Dep. II")

6.     Exhibit F     Excerpts from Deposition of Natalie Rojas taken on July 25, 2013 ("Rojas Dep. I")

7.     Exhibit G     Excerpts from Deposition of Natalie Rojas taken on July 26, 2013. ("Rojas Dep. II")

8.     Exhibit H     Application to B/E by Vaughn

9.     Exhibit I     Vaughn's Answers to Plaintiff's Request for Admissions, dated February 7, 2013.

10.     Exhibit J     Invention and Confidentiality/Non-Compete Agreement signed by Faisal Mosharrof

11.     Exhibit K     Press Release for John Turner, Odyssey Aerospace

12.     Exhibit L     Email, "Good Morning Babe," dated June 7, 2011 Between Vaughn and Lauren Dusi

13.     Exhibit M     Email, "Yo," dated March 6, 2012 Between Vaughn and Ventorini

14.     Exhibit N     Email, "LPO resume" dated February 6, 2012 Between Vaughn and Luis Palomino

15.     Exhibit O     Email, "Fwd: Your Job Search Agents on HEICO" dated February 15, 2013 Between Vaughn and Palomino

{27052709;2}

DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT Page 32 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

16.     Exhibit P       Demand Letters (Compilation)

17.     Exhibit Q       Appendix F to Part 25 of 14 C.F.R., Chapter 1

18.     Exhibit R       Certification Plan

19.     Exhibit S       Email from Mosih

20.     Exhibit T       Technical Standard Order

{27052709;2}

**DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** Page 33 of 33
CIVIL ACTION NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*