# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| WEBER AIRCRAFT, L.L.C., | § § § | |
| Plaintiff | § § | |
| v. | § § | Case No. 4:12-cv-00666-RC-ALM |
| VIKRAM KRISHNAMURTHY, MOUMITA ROY, RYAN VAUGHN and ANTONIO VENTORINI, | § § § § § | |
| Defendants. | § § § | |

## DEFENDANTS KRISHNAMURTHY, ROY, AND VENTORINI'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

## I. Introduction

At the time the AZ Defs filed their Motion for Summary Judgment, the record was bereft of any evidence that this case should proceed past the summary judgment stage. Since that time, discovery has closed and the material facts dictating the result in this case remain undisturbed.

First, Plaintiff's Response ignores and therefore fails to controvert the fact that, at the time the AZ Defs signed the Invention and Confidentiality/Non-Compete Agreements ("Agreements"), they were already subject to Weber's Assignment of Inventions Agreements, which provided the AZ Defs with access to Weber's confidential information in return for their commitment not to disclose it, so there was no new consideration for the Agreements. Second, Plaintiff's Response fails to even mention, let alone controvert, the fact that there is no evidence of the AZ Defs' use of Weber's confidential information during their now eighteen months of employment at B/E Tucson. Third, Plaintiff presents no evidence to controvert the fact that, in their current employment at B/E, the AZ Defs all design or certify products that are not designed, certified, or manufactured by Weber. Fourth, Plaintiff presents no evidence, only rote speculation, controverting the fact that none of the AZ Defs have solicited any of Weber's employees. Finally, Plaintiff still has presented no evidence of damages that resulted from the AZ Defs' alleged breach of their agreement. Though the miniscule evidence of damages presented by Plaintiff should not be considered by the Court for the reasons articulated in Defendants' Motion to Strike, filed concurrently herewith, none of that improper evidence is related to the alleged *breach* of the Agreements. Consequently, Plaintiff has not even attempted to controvert the fact that all costs identified as "damages" by Weber would have been incurred if the AZ Defs had left their employment for *any* reason, including accepting employment in a non-competing industry or retiring. Based on this record, summary judgment should be granted in favor of the AZ Defs.

## II. Standard of Review

"The summary judgment stage is 'the put up or shut up moment in litigation.'" Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[T]he non-moving party must

rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Crawford v. Miller, 269 Fed. Appx. 178, 2008 U.S. App. LEXIS 5867 (3$^d$ Cir. 2008).

"Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." Barkley v. Singing River Elec. Power Ass'n, 433 Fed. Appx. 254, 257 (5th Cir. 2011) (citation omitted). "The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

### III. The Undisputed Evidence Still Establishes That the Agreements are Unenforceable.

#### A. Weber Has Failed To Introduce Evidence to Establish That Adequate Consideration Was Provided for the AZ Defs' Entry Into the Agreements.

Tellingly, Plaintiff has entirely failed to address the AZ Defs' dispositive argument that they were already contractually bound, upon hire and long before the Agreements were signed, not to disclose Weber's confidential and proprietary information. Each of the AZ Defs were required to sign an Assignment of Inventions Agreement that provided:

> I will regard and preserve as confidential all information pertaining to the company's business that may be obtained by me from specifications, drawings, blue prints, reproductions and other sources of any kind as a result of such employment and I will not without written authority from the Company so to do disclose to others either during my employment or thereafter, except as required in the line of my employment with the Company, such or any other confidential information, matter or thing connected with the business of the Company might be contrary to its best interest.

[Doc. 59 at 3-4, SOF ¶¶ 1-3, Exh. C (Exhs. 1-3)]

In other words, Plaintiff attempts to assert that the AZ Defs were granted access to new and additional confidential information in exchange for their signatures on the Agreements. [Doc. 66 at 20] That assertion is demonstrably false. The AZ Defs had already been granted *that very same* access to Plaintiff's confidential information as consideration *for their entry into the Assignment of Inventions Agreements*. That same information could not also independently constitute consideration for a second contractual Agreement. It is the same consideration that Plaintiff already gave to the AZ Defs. Therefore, it is illusory consideration. See AM.JUR.2D

(Contracts) § 153 ("Where a contract does not contemplate making a subsequent agreement, the original consideration does not support such subsequent agreement."); Zinpro Corp. v. Ridenour, 1996 WL 438850 (Tex. App. Ct. 1996) (holding that where an employee entered into a confidential information agreement at the start of his employment, a subsequent confidential information agreement executed after six years of employments lacked new consideration). There is no plausible argument that granting the AZ Defs access to confidential information – a right they *already had without restriction* based upon their entry into the Assignment of Inventions Agreements – could constitute new consideration for their entry into the Agreements. This argument is uncontroverted in Plaintiff's response.

### B. The Agreement's Restraints Are Unreasonably Broad and Ambiguous.

Plaintiff asks this Court to assume that the Agreement's "restraints are reasonable" simply because the Agreement "identifies specific Weber competitors for whom employees may not work after leaving Weber." [Doc. 66 at 21] It gives no further support for this proposition. On its face, Plaintiff's alleged "reasonable restraint" prohibits any Weber employee from accepting employment with any B/E Aerospace entity, no matter where and no matter what product is manufactured at the facility. B/E manufactures aircraft toilets – this provision would prohibit any of the AZ Defs from going to B/E to work exclusively on the design of toilets.

Plaintiff asserts that restraining the AZ Defs from working for B/E Tucson is "reasonable," notwithstanding that each of the following facts remains undisputed: (1) B/E Tucson has *no direct competitors* in the Super First Class Suite market [Doc. 59 at 10, SOF ¶ 20] and Weber had never manufactured a fully enclosed suite as of the date the AZ Defs left Weber [Exhibit ("Exh.") 1, Declaration of Joseph A. Kroeger ("Kroeger Dec."),¶ 2, Exh. A; Exh. 2, RFA Response Nos. 15-17]; (2) B/E Tucson, where the AZ Defs work, has no role in the design, manufacture or certification of any aircraft seats [Doc. 59 at 10, SOF ¶ 21]; and (3) none of the AZ Defs have ever worked on the certification of an aircraft seat at B/E [Id. at 10-11, SOF ¶¶ 22-24], whereas they each worked *solely* on commercial aircraft seating and seat certification at Weber [Doc. 66 at 5-6; Exh. 1, Kroeger Dec., ¶ 2, Exh. A.; Exh 2, RFA 39-41, 45-53]. Plaintiff

AZ DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT    Page 3
NO. 4:12-cv-666-RC-ALM; *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy, et al.*

cannot, then, colorably claim that its restriction does "not impose a greater restraint than is necessary" on the AZ Defs.  Marsh USA, Inc. v. Cook, 354 S.W.3d 764, 777 (Tex. 2011).

The undisputed facts establish that Weber does not compete with B/E Tucson in the Super First Class Suite market and that Weber does not manufacture or sell a Super First Class suite.  As Plaintiff continues to trumpet in its Response, "Weber is one of the world's leading *aircraft seat* manufacturers." [Doc. 66 at 1 (emphasis added)]  The AZ Defs accepted positions at B/E Tucson to design and certify Super First Class Suite furniture, *not aircraft seats*. [Doc. 59 at 10, SOF ¶¶ 20-21]  There is no dispute as to this fact.  Plaintiff repeatedly [see, e.g. Doc. 66 at 21, 24] attempts to obfuscate this issue by asserting that B/E Aerospace itself is the "second largest aircraft seating manufacturer" and therefore Plaintiff can properly forbid employees from going to work for B/E Aerospace and any and all of its divisions, including B/E Tucson.  By Plaintiff's logic, an engineer that worked for Johnson & Johnson's Listerine division making mouthwash could not depart to competitor Proctor & Gamble's Pampers division to work on diapers or any other P & G division.  Plaintiff's unsupported argument that the Agreement is reasonable in scope simply because it specifically identifies "B/E Aerospace" as a competitor is anti-competitive, overbroad, and, accordingly, must be rejected.  See Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd., 2005 WL 2708811 (W.D. Tex. 2005) ("Even though the noncompete covenants are unambiguous, they may be overbroad and unenforceable.").

A covenant that purports to cover areas where the employee did not work "has generally been held unenforceable" if the interest being protected is customer good will or confidential information.  See Gomez v. Zamora, 814 S.W.2d 114, 118 (Tex. Ct. App. 1991) (citation omitted). Plaintiff is asking this Court to enforce an overbroad noncompetition provision to prevent individuals from working on an entirely different product from one they worked on previously—a product that Plaintiff does not even manufacture.  That cannot be the right result under Texas law.  Plaintiff's suggested interpretation is anti-competitive and overbroad.

Plaintiff still has failed to answer one simple question:  what legitimate protectable interest does Weber have in preventing the AZ Defs from helping to design and certify Super

First Class Suites with B/E Tucson? Plaintiff has already admitted that it has no evidence that any of the AZ Defs have ever or will ever utilize its confidential information in their employment with B/E Tucson. [Exh. 1, ¶ 2, Exh. A; Exh. 2, RFA Response Nos. 62-70] Plaintiff does not even manufacture or sell Super First Class Suites, so it is not as if the AZ Defs helping B/E Tucson to sell additional Super First Class Suites would cost Plaintiff a single dollar in sales of its own products. In the absence of any meaningful overlap between the products the AZ Defs worked on at Weber and B/E, there is no legitimate interest worthy enough of protection to justify the substantial restraint of prohibiting the AZ Defs' employment at B/E Tucson.

Plaintiff further fails to address the patent ambiguity in the Agreement. Competing Business is defined as a "company engaged in the design, testing and certification of '*seating products* and any subcomponents of the seating system.'" [Doc. 66 at 21] That definition is focused on *aircraft seating companies*. B/E Tucson, a separate division of B/E Aerospace, is *not* an aircraft seating company and thus does not fall into this definition. It would be reasonable to interpret the Competing Business definition as limited to only companies that manufacture and certify commercial aircraft seating, and that is how the AZ Defs interpreted the provision. [Doc. 59 at 8, SOF ¶ 14] Instead, Plaintiff contends that the provision is not ambiguous by virtue of the fact that the definition of Competing Business describes "exactly the type of work that the Defendants currently perform as engineers for B/E." [Id. at n. 118] This might have been a compelling argument, if Plaintiff had cited evidence that actually supported this assertion or if the record evidence did not conclusively rebut Plaintiff's position. In contrast, Plaintiff cites to deposition testimony, which establishes: (1) Krishnamurthy's responsibilities as a design validation engineer for aircraft seating at Weber; (2) the fact that other B/E facilities, not its Tucson facility, manufacture and certify seats; and (3) the fact that Ventorini prepares flammability tests for suites (not seats). [Id.] It is unclear how any of this "evidence" establishes that the AZ Defs perform "exactly" the type of work at B/E Tucson that they performed at Weber. The undisputed facts conclusively demonstrate the opposite. And, if in fact the Competing Business can be construed to encompass the "exact" work performed by the AZ

Defs—despite the fact that they work on products that are not manufactured by Weber, subject to different FAA requirements than any product they worked on at Weber, and certified through an entirely different process—then the scope of the agreement is, by definition, unreasonably broad.

Plaintiff cannot have it both ways. Either the Competing Business definition applies to the entirety of B/E Aerospace, in which case it is overbroad and unreasonable, or it is limited to commercial aircraft seating companies like Weber, in which case the provision does not apply to the AZ Defs' employment by B/E Tucson. Either way, the Agreements do not prevent the AZ Defs from working for B/E Tucson.

### C. Plaintiff Relies on Speculation, Not Evidence to Support Its Solicitation Argument.

Plaintiff devotes all of seven lines to support its argument that the AZ Defs have solicited Weber employees in violation of their Agreements. Perhaps this weak effort is because Plaintiff's own 30(b)(6) representative bindingly admitted that Plaintiff had no evidence to support a solicitation claim against any of the AZ Defs. [Doc. 59, SOF ¶¶ 33-35] For that reason alone, summary judgment must be granted as to Plaintiff's solicitation claim.

Plaintiff continues its heavy-handed effort to enforce a non-solicitation provision as to a married couple despite a paucity of evidence. When asked why Weber believed Krishnamurthy and Roy had violated their non-solicitation agreements, Weber's 30(b)(6) representative testified: "Number one, they went to work for the competitor. And – and number two, there had to be discussion amongst them to leave together. They gave their notices to leave simultaneously." [Id.] Once again, Plaintiff simply assumes that solicitation occurred with ***no actual evidence*** of it. When pressed to identify who solicited who, Weber responded, "I can't answer that." When pressed, "You don't know. Right?" he responded, "Right." When asked, "You've seen no evidence to suggest that one solicited the other, do you?", he responded "No." That answer ends any solicitation claim against Krishnamurthy and/or Roy.[1]

---

[1] While there is no evidence to support a solicitation claim against this married couple, public policy and common sense tell us that Plaintiff cannot seek to hold spouses powerless to coordinate their career moves together without violating a non-solicitation provision. Plaintiff's argument is ludicrous (and unenforceable) on its face.

The evidence as to any purported claim of solicitation by Ventorini is equally flimsy. Plaintiff relies exclusively on a single e-mail wherein a headhunter, Andrew Walbert, requested that Ventorini refer any interested Weber employees. [Doc. 66, Exh. 44] Plaintiff is well aware of, but fails to controvert, Ventorini's deposition testimony on this e-mail, when Plaintiff asked:

> Q. And you responded to [Walbert's] e-mail [Doc. 66, Exh. 44] on April 20th of 2012, and state, "I will ask around next week. Most of the cert guys left at Weber have family immigration issues, and they must stay there for now, but I will ask." Did I read that correctly?
> A. Yes.
> Q. Okay. Did you ask any of the certification engineers at Weber if they would be interested in pursuing a certification engineer job through BE?
> A. No.

[Exh. 2, Ventorini Deposition Transcript, 161:25 – 162:9] When asked to "identify for me one employee at Weber that Mr. Ventorini solicited to leave Weber, please," Weber's 30(b)(6) representative admitted, "I don't have a particular name." [Doc. 59 at 13, SOF ¶ 35] Plaintiff is no closer to identifying evidence of solicitation than it was on the day it filed this suit. On this record, summary judgment is appropriate as to Plaintiff's meritless solicitation allegations.

### D. Plaintiff Has Failed to Produce Evidence of Provable Damages Attributable to the AZ Defs' Alleged Breach.

After the close of discovery, Plaintiff's case for provable damages rests on a single flimsy and improper piece of evidence. After 15 months of discovery, Plaintiff has not produced one iota of evidence of a lost customer, of confidential information that has been used to its detriment or any other type of damage typically associated with substantial non-compete/confidential information litigation. Instead, Weber's 30(b)(6) representative made speculative statements like, "we *may* lose contracts down the line that this competitor gets to pick up due to our employees going to work for them …" [Exh. 3, Weber 30(b)(6) Deposition Transcript (Rojas Vol. I) 92:4-6] That is not evidence. Rote speculation cannot meet Plaintiff's burden to prove demonstrable damages. Vanasek v. Underkofler, 50 S.W.3d 1, 8 (Tex. App. 1999) aff'd in part, rev'd in part, 53 S.W.3d 343 (Tex. 2001) ("While uncertainty as to the *amount* of damages is not fatal to recovery, lack of evidence or uncertainty as to the *fact* of damages is. Damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to

some fairly definite standard, established experience, or direct inference from known facts. Remote damages, or those damages that are purely conjectural, speculative, or contingent, are too uncertain to be ascertained and cannot be recovered.").

Plaintiff's lone other citation is to an "Exh. 49." [Doc. 66 at 23, fn. 121] There is no such exhibit, but, presumably, Plaintiff intended to cite to Exh. 46. If so, that exhibit was belatedly disclosed in violation of Rules 26(a) and (e), is grossly speculative, and does not even remotely establish proper damages attributable to any of Defendants' breach of the Agreements.[2] Contrary to Plaintiff's representations to the Court, there is nothing in this spreadsheet (or anywhere else) to demonstrate any claimed loss in productivity costs or training costs.

Plaintiff is obligated to provide ***specific factual proof*** of damages, not general hypotheticals or allegations unsupported by evidence. Vanasek, 50 S.W.3d at 8. Indeed, under Fed. R. Civ. P. 26(a)(1)(A)(iii) and 26(e), Plaintiff is obligated to provide a "computation of ***each category of damages*** claimed by the disclosing party." Plaintiff has never done that. The belatedly disclosed, speculative spreadsheet fails to meet that obligation. Plaintiff's utter failure to comply with Rule 26(a)(1)(A)(iii) is fatal to Count I. It is far too late for Plaintiff to remedy this deficiency now, more than a month after discovery has closed.

Aside from the inadmissible spreadsheet, Plaintiff has not identified ***any*** evidence of monetary damages. In tacit recognition of this failure, Plaintiff asserts a fallback argument that, "In addition to monetary damages, irreparable harm to Weber is presumed by law because they left Weber to work for B/E, a Weber competitor." [Doc. 66 at 23] First, ***B/E Tucson*** is not a Weber competitor (again, Plaintiff attempts to gloss over this critical distinction). Second, any arguable presumption of irreparable harm to Plaintiff has been ***conclusively rebutted***. On July 25, 2013, nearly a year after filing its complaint, Plaintiff's own 30(b)(6) deponent bindingly testified, "I do not know of any conduct that has – has caused irreparable harm – to this point." [Doc. 59, 13, SOF ¶ 36] He went on to admit that Weber had no evidence of any loss of

---

[2] Defendants' Motion to Strike, filed separately, articulates the myriad reasons why this exhibit should be excluded from the record.

business, goodwill or competitive position. [Id. at SOF ¶¶ 37-40] Plaintiff has never changed or supplemented this binding deposition testimony. Thus, any presumption of irreparable harm has been conclusively rebutted by Weber's own 30(b)(6) representative.

Finally, even if this Court considers the spreadsheet as part of the record, Plaintiff has not disputed the fact that all costs identified by Plaintiff would have been incurred if the AZ Defs had left their employment with Weber *for any reason*. As Plaintiff admits, the AZ Defs were at-will employees. [Doc. 66 at 25, n. 133] Plaintiff relies on this fact as its sole defense to the AZ Defs' unclean hands argument, but simultaneously seeks damages that would only be appropriate if the Defendants had been employed for a specified term. It is therefore undisputed that Plaintiff has failed to identify any damages attributable to the alleged breach.

With discovery having closed, Plaintiff has utterly failed to introduce evidence to meet its burden of *proving* damages attributable to Defendants' breach of the Agreements or to meet its obligations under Rule 26, and Count I must be dismissed for these reasons as well.

**IV. The Undisputed Evidence Still Precludes Plaintiff from Entitlement to Injunctive Relief as a Matter of Law.**

As set forth above, Plaintiff has failed to show irreparable harm, and for that reason alone summary judgment is mandated as to Plaintiff's injunctive relief claim. Notwithstanding this fact, Plaintiff has also failed to demonstrate its entitlement to equitable tolling, so its claim for injunctive relief is moot.[3]

Putting aside the dispositive irreparable harm and mootness issues, Plaintiff's argument that it is entitled to injunctive relief is deficient for additional reasons. Plaintiff's assertion that the balance of hardship favors Weber relies on vague allegations of harm, which, at most, allege a few thousand dollars in (improper and unproven) damages. That is not the type of harm that justifies this Court's use of the extraordinary remedy of injunctive relief to halt three individuals' livelihoods in a new state working on an entirely different product.

---

[3] The AZ Defs incorporate by reference Defendant Vaughn's analysis of the inapplicability of equitable tolling in this case. [See § II.D of Defendant Vaughn's Reply in Support of Summary Judgment]

Finally, Plaintiff never once denies the facts that entitle the AZ Defs to the defenses of unclean hands, estoppel and waiver. Plaintiff never denies that it mistreated and overworked its certification engineers, causing a mass exodus of dissatisfied employees. To be clear, Plaintiff does not dispute that it took away overtime, simultaneously increased work hours, and instructed the engineers to "bend" procedures to get work done on time. When the AZ Defs understandably (along with many others) sought refuge elsewhere at a division that does not even manufacture aircraft seating, Plaintiff has vigorously pursued frivolous litigation against them. There is nothing equitable about this pursuit. The Court should not sanction it any further.

Plaintiff does not deny that its Manager of Project Engineering, expressly told Ventorini, "Don't worry about the Agreement that you signed because they don't enforce those things anyway." [Doc. 59 at 27, SOF ¶ 18] Nor does it deny that its Vice-President told Krishnamurthy and Roy that the purpose of the Agreements was to prevent employee departures to Recaro and then he proceeded to *introduce them to B/E Tucson* to help them gain employment there. [Id. at 27, SOF ¶¶ 1, 2, 5, 6, 13] Plaintiff's failure to even dispute that its own Vice-President – who helped implement the Agreements – encouraged these employees to depart to B/E Tucson forecloses any argument by Plaintiff that its senior management's conduct did not waive any right to enforce the Agreements or estop Plaintiff's enforcement efforts.

## V.     Conclusion

The time "to put or shut up" has passed. Plaintiff has failed to address, let alone rebut, key facts that entitle the AZ Defs to summary judgment. To the extent that it attempts to controvert material facts, Plaintiff continues to rely on speculation, not evidence. After 16 months and substantial expense, Plaintiff has come to the discovery finish line and fallen well short of marshaling the proof necessary to support its claims. Accordingly, this Court should enter summary judgment in favor of the Defendants on all claims and, in doing so, grant them the opportunity to finally move on with their lives. Pursuant to Tex. Bus. & Comm. Code § 15.51(c), an award of attorneys' fees incurred in defending against Weber's improper and overbroad efforts to assert these unenforceable restrictive covenants is warranted.

Pursuant to Fed. R. Civ. P. 56 and LR CV-56, Defendants Vikram Krishnamurthy ("Krishnamurthy"), Moumita Roy ("Roy"), and Antonio Ventorini ("Ventorini") (collectively the "AZ Defs"), by and through their undersigned counsel.

Dated: October 21, 2013

Respectfully submitted,

SNELL & WILMER L.L.P.

By: */s/ Joseph A. Kroeger*
Jeffrey Willis (Admitted pro hac vice)
Joseph A. Kroeger (Admitted pro hac vice)
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
Facsimile: 520.884.1294
Attorneys for Defendants Vikram Krishnamurthy, Moumita Roy, and Antonio Ventorini

-and-

AKERMAN SENTERFITT, L.L.P.

By: */s/ Clint A. Corrie*
D. Stewart Clancy, SBN: 24027926
Clint A. Corrie, SBN: 04840300
David I. Spector (Admitted pro hac vice)
Arlene K. Kline (Admitted pro hac vice)
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339
Attorneys for Defendant Ryan Vaughn

# CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2013, a true and correct copy of the foregoing Reply in Support of Motion for Summary Judgment was electronically served via *CM/ECF* upon:

Michael A. McCabe
Texas Bar No. 24007628
mmccabe@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24020838
wdunwoody@munckwilson.com
Munck Wilson Mandala, LLP
12770 Coit Road, Suite 600
Dallas, TX 75251
Telephone: 972-628-3600
Fax: 972-628-3616
*Attorney for Plaintiff*

*/s/ Clint A. Corrie*
Clint Corrie