# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| WEBER AIRCRAFT, L.L.C., § § Plaintiff, § § vs. § § VIKRAM KRISHNAMURTHY, § MOUMITA ROY, RYAN VAUGHN and § ANTONIO VENTORINI, § § Defendants. § | Case No. 12-cv-00666 (Judge Clark / Judge Mazzant) |

### PLAINTIFF'S SUR-REPLY TO DEFENDANTS KRISHNAMURTHY, ROY, AND VENTORINI'S MOTION FOR SUMMARY JUDGMENT

Michael A. McCabe
Texas Bar No. 24007628
mmccabe@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24040838
wdunwoody@munckwilson.com
Kelly P. Chen
Texas Bar No. 24062664
kchen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, TX 75251
Telephone: 972-628-3600
Telecopier: 972-628-3616

**ATTORNEYS FOR PLAINTIFF
WEBER AIRCRAFT, LLC**

Plaintiff Weber Aircraft, L.L.C. ("Weber") files this Sur-Reply to Defendants' Motion for Summary Judgment [Doc. 59] as follows:

## I. INTRODUCTION

Weber brings this lawsuit against Defendants for their willful and continuing breach of an employment agreement containing noncompetition, nonsolicitation, and confidentiality provisions. The agreements were supported by adequate consideration and contain reasonable restraints on competition that are necessary to protect Weber's business interests. The evidence is clear that Defendants have blatantly violated at least the noncompetition and nonsolicitation provisions of the Agreement by working for a direct competitor of Weber and by soliciting former Weber employees to work for Weber competitors, and there is a fact issue regarding whether Defendants have violated the confidentiality provision of the Agreement. Because Weber has presented ample evidence to contradict Defendants' grounds for summary judgment and because Texas law allows for the enforcement of confidentiality, nonsolicitation, and noncompetition provisions such as the ones at-issue, the Court should deny Defendants' motion for summary judgment.

## II. ARGUMENTS AND AUTHORITIES

**A.     The Agreement is Enforceable.**

    **1.     Weber Provided New Consideration.**

Defendants' argument that no new consideration was provided under the Agreement completely ignores Texas Supreme Court authority regarding the

enforceability of covenants not to compete in Texas.[1] As discussed at length in Weber's response,[2] the Texas Supreme Court has held that an at-will employee's non-compete covenant becomes enforceable when the employer performs the promises it made in exchange for the covenant.[3] In *Sheshunoff*, the employer promised to provide the employee with "access to certain confidential and proprietary information and materials belonging to Employer, its affiliates, and to third parties" in exchange for the employee's continued employment.[4] The agreement then specified the types of information that qualified as confidential information and provided that the employee agreed to keep all such information strictly confidential.[5] *After the agreement was signed, the employee's access to confidential information did not change*.[6] The Texas Supreme Court found that the noncompete was enforceable and supported by adequate consideration because the employer had provided to the employee confidential

---

[1] For example, Defendants rely on an unpublished decision, *Zinpro Corp. v. Ridenour*, that was decided before the Texas Supreme Court issued its opinion in one of the seminal cases on the enforceability of noncompetes in Texas, *Alex Sheshunoff Management Services, L.P. v. Johnson*. Moreover, the *Zinpro* case applied Minnesota law in determining the adequacy of the consideration. No. 07-96-0008, 1996 WL 438850, at *9 (Tex. App.—Amarillo, Aug. 1, 1996, no writ). Thus, the only case which Defendants rely upon regarding adequate consideration for enforceability of the Agreement is inapposite.

[2] *See* Pl.'s Resp. to Defs. Krishnamurthy, Roy, and Ventorini's Mot. for Summ. J. ("Response") [Doc. 66] at 16-20.

[3] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006).

[4] *Id.* at 646-47.

[5] *Id.*

[6] *Id.*

information—which was continually updated and changing[7]—and the employee had promised in return to preserve the confidences of his employer.[8]

Here, the situation is the same. Defendants do not dispute that they were given access to confidential information, both before and after signing the Agreement.[9] While the types and categories of confidential information provided to Defendants may not have changed, the actual confidential documents, drawings, test reports, engineering designs, etc. were constantly updated and changing.[10] Defendants received new and different confidential documents and information from Weber after signing the Agreement.[11] Thus, the Agreements are supported by adequate consideration and should be enforced.[12]

2. **The Restrictions are Reasonable.**

Defendants argue that the noncompete provision is overly broad and ambiguous. That is not true. The Agreement is not narrowly tailored is false. The Agreement both identifies specific competitors for whom Defendants are prohibited

---

[7] *Id.* at 663. The confidential information included, among others, information about the company's finances, strategies, client lists, product development, and pricing.

[8] *Id.* at 655; *see also* Response [Doc. 66] at n. 102.

[9] *See, e.g.,* Exs. 13-21 to Response [Doc. 66]; Ex. 2, Decl. of Kevin Reeves, to Response [Doc. 66], at 2-3, ¶ 8. The Agreements were signed on November 10 and 11, 2010, and these exemplar documents containing confidential information that Defendants received were dated 2011-2012.

[10] Defendants' argument that because they were previously granted access to confidential information under the Assignment of Inventions Agreement, access to confidential information cannot be consideration under the Agreement, is a red herring. The Agreement here is a covenant not to compete, which is governed by different principles and case law.

[11] *See Sheshunoff*, 209 S.W.3d at 646-4147 (finding agreement enforceable because there was adequate consideration despite no change to employee's access to confidential information).

[12] *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011); *Sheshunoff*, 209 S.W.3d at 648; *Mann Frankfort Stein & Lipp v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009).

from working and defines specifically what constitutes a "Competing Business." The Agreement does not encompass the entire aerospace industry or even all aircraft component and subcomponent manufacturers. Instead, the Agreement is narrowly tailored to manufacturers of aircraft "seating products and any sub components of the seating system and/or product for transport airplane," including five specific competitors.[13] Texas courts have held these types of restrictions constitute reasonable restraints on competition.[14]

Defendants next argue that "B/E Tucson" is not a competitor of Weber. Under the Agreement, a "Competing Business" is defined as a company engaged in the design, testing, and certification of "seating products and any sub components of the seating system and/or product for transport airplane."[15] It is undisputed that Defendants' employer, B/E Aerospace, designs, manufactures, and sells economy, business, and first class seats for commercial aircraft. It is undisputed that Weber and B/E compete in that space. Defendants' work at B/E includes collaboration with a B/E

---

[13] *See* Exs. 10-12, Defs.' Employment Agreements to Response [Doc. 66], at § 8.

[14] *See, e.g.,* Response [Doc. 66] at n. 116; *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 797 (S.D. Tex. 2010) (enforcing covenant not to compete where "covenant is not an industry-wide exclusion that encompasses all oil and gas, but instead restricts [employee] from working for a competitor within the oil displacement tolls or services industry."); *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 119 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding covenant not to compete enforceable where covenant did not allow employee "to engage in competitive business in Canada or the United States [and where employer] submitted evidence to show that it limited its competitors to twenty companies" and that "[n]ot all oil and gas companies were included").

[15] *See* Exs. 10-12, Defs.' Employment Agreements to Response [Doc. 66], at § 8.

location—Miami—that manufactures and certifies seats.[16] Defendants contend that the B/E facility they work at in Tucson only makes "Super First Class" seats and therefore does not compete with Weber, despite the fact that B/E is Weber's biggest competitor. The Agreement specifically identifies B/E Aerospace as a direct competitor for whom Defendants could not work for a one-year period. The Agreement does not provide an exception for noncompeting products, divisions, or locations—and for good reason. The whole point of the non-compete is to ensure the protection of confidential information, which cannot be done when a company's engineers are allowed to avoid non-compete provisions simply by claiming that their new positions are non-competitive. The trust that existed between Weber and Defendants was abused by Defendants when they intentionally violated their promises not to work for B/E and lied about where they were going to work when they left Weber. Moreover, the notion that "B/E Tucson" is a separate company or division that does not compete with Weber is a fiction created by Defendants for their own self-serving purposes in this lawsuit. For example, B/E's website lists Tucson *as a location*, not a separate entity.[17] "B/E Tucson" is not a separate corporate entity. The company name is "B/E Aerospace, Inc."[18] This is the same company that compete with Weber, and the same company that is identified by name in the non-compete.

---

[16] *See* Ex. 4, Roy Dep., to Response [Doc. 66], at 42:18-22 & Ex. 5, Ventorini Dep., to Response [Doc. 66], at 50:25-51:2 & 58:19-25.

[17] Ex. 1, B/E Aerospace Locations.

[18] Ex. 2, Arizona Corporate Commission Entity Search Results.

Further, Defendants argue that because they work on "Super First Class" suites, rather than normal aircraft seating, they are not competing with Weber. But designing and manufacturing Super First Class suites, which necessarily include aircraft seating, clearly falls within the scope of the non-compete. Even if Defendants never worked on Super First Class seats while at Weber, Defendants admit that in designing and manufacturing Super First Class Suites, they collaborate with B/E Aerospace's Miami facility which manufactures and certifies aircraft seats.[19]

Finally, the Agreement does not bar the Defendants from working in the aerospace industry altogether. The Agreement is limited to B/E and other companies that make seating products and sub components of the seating system for transport airplanes. This restriction is narrow in scope and only one year in duration. Under Texas law, such restrictions are enforceable. Accordingly, the Court should deny Defendants' motion for summary judgment.

## B. Defendants Violated the Agreement by Soliciting Weber Employees.

Defendants' contention that Weber does not have any evidence of solicitation is also incorrect. Krishnamurthy and Roy deliberately and without regard to the Agreement's non-compete and non-solicitation provisions engaged in behavior that violated the Agreement's terms. The evidence shows that Krishnamurthy and Roy

---

[19] *See* Ex. 4, Roy Dep., to Response [Doc. 66], at 42:18-22 & Ex. 5, Ventorini Dep., to Response [Doc. 66], at 50:25-51:2 & 58:19-25. Defendants' attempt to analogize working for Johnson & Johnson's mouthwash division to working for Procter & Gamble's diapers division is not on point. As discussed above and in Weber's Response, "Competing Business" is limited to seating products and seating systems. Weber manufactures aircraft seats. B/E Aerospace also manufactures seats and is thus specifically identified as a competitor in the Agreement.

engaged in lengthy discussions with B/E concerning employment opportunities at B/E.[20] They copied each other on emails with B/E, participated together on telephone conferences with B/E, traveled to Arizona together to interview with B/E, and conditioned their employment with B/E on their work visas.[21] When questioned about what Krishnamurthy and Roy spoke to each other about with respect to B/E employment opportunities, they declined to answer based upon spousal privilege.[22] Defendants cannot use the privilege as both a sword and a shield.[23]

With respect to Ventorini, the documents show that Ventorini offered to "ask around" in response to a recruiter's inquiry regarding engineer employment opportunities at B/E.[24] While Ventorini claims that he did not solicit other Weber employees, such testimony is self-serving and contradicted by Ventorini's own written statements.[25] Thus, there is at least a genuine issue of material fact such that Defendants' motion for summary judgment should be denied.

---

[20] *See* Response [Doc. 66] at 10-13 ("Krishnamurthy and Roy Had Protracted Discussions With B/E Aerospace Months Before Accepting Positions at B/E Aerospace and Terminating Their Employment With Weber.").

[21] *Id.*

[22] Ex. 3, Excerpts from May 29, 2013 Dep. Tr. of Moumita Roy, at 205:15-206:6; Ex. 4, Excerpts from May 30, 2013 Dep. Tr. of Vikram Krishnamurthy, at 265:4-24.

[23] *See, e.g., Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (offensive use of privilege as a "sword and shield" constitutes a waiver of the privilege).

[24] *See* Ex. 43, May 26 – Apr. 2, 2012 Emails between Andrew Walbert and Def. Ventorini, to Response [Doc. 66]; Ex. 44, Apr. 20, 2012 Emails between Andrew Walbert and Def. Ventorini, to Response [Doc. 66].

[25] *See id.*

## C. Weber Suffered Damages From Defendants' Breach of the Agreement.

Defendants also claim that Weber has no evidence of monetary damages. However, as Defendants acknowledge, "uncertainty as to the *amount* of damages is not fatal to recovery."[26] Since the inception of this lawsuit, Weber has alleged that Defendants' breach of the Agreement has damaged Weber.[27] One of Weber's corporate representatives testified to at length regarding the replacement costs and various other expenses incurred by Weber.[28] An estimate of these replacement costs was provided to Defendants on a spreadsheet, and Weber's corporate representative testified at length regarding that spreadsheet, supplementing Weber's initial disclosures regarding damages.[29] Defendants' claim that Weber did not comply with its Rule 26 obligations is thus meritless.[30]

Notwithstanding these monetary damages, and contrary to Defendants' assertions, there is a rebuttable presumption that Weber suffered irreparable injury from the Defendants' departures because they were highly-trained engineers at Weber, with access to Weber's confidential and proprietary information, who left to work for

---

[26] *See* Reply [Doc. 75] at 8.

[27] *See generally* Original Pet. and Appl. for TRO and Further Injunctive Relief [Doc. 1-2] & First Am. Compl. [Doc. 8].

[28] Ex. 45, Rojas July 26, 2013 Dep., to Response [Doc. 66] at 91:8-92:18.

[29] Federal Rule of Civil Procedure 26(e) provides that discovery must be supplemented if it "has not otherwise been made known to the parties during the discovery process."

[30] Defendants also complain that this spreadsheet is unreliable and speculative. For the reasons set forth in Weber's Response to Defendants' Motion to Strike, filed concurrently herewith, the Court should deny Defendants' motion.

Weber's biggest competitor, B/E Aerospace.[31]  Thus, Defendants' motion for summary judgment as to Weber's claim for breach of contract should be denied.

D.    **Weber is Entitled to Injunctive Relief.**

There is no equity in allowing Defendants to continually and persistently violate the Agreement by working for one of Weber's direct competitors.  Defendants have not met their burden of proof on their affirmative defenses of unclean hands, estoppel, and waiver,[32] nor do they provide any support for their irrelevant and inflammatory accusations that Weber "mistreated and overworked its certification engineers."  To the contrary, the record evidence establishes that Weber is one of the world's top manufacturers of aircraft seats, is an industry leader in innovative design and safety features, and employs approximately 1,500 employees.[33]

---

[31] *See, e.g., Beasley v. Hub City Tex., L.P.*, No. 01-03-287, 2003 WL 22254692, at *8 (Tex. App.—Houston [1st. Dist.] Sep. 29, 2003, no pet.) (holding that a "rebuttable presumption" of irreparable harm exists when a highly trained employee breaches a noncompetition agreement); *O'Brien v. Rattikin Title Co.*, No. 2-05-238, 2006 WL 417237, at *6 (Tex. App.—Fort Worth Feb. 23, 2006, no pet.) (finding irreparable injury even though employer "could not put a dollar figure on the harm [] sustained" from former employee going to work for competitor immediately after leaving and affirming trial court's grant of temporary injunction); Ex. 2, Reeves Decl., to Response [Doc. 66], at ¶¶ 3-8.  In support of their contention that they have rebutted any presumption of irreparable harm, Defendants cite to testimony from one of Weber's corporate representatives regarding whether Defendants' conduct caused any irreparable harm to Weber.  Counsel for Weber objected to the question on the grounds that it lacked foundation, ignored prior testimony and interrogatory answers, and called for a legal conclusion.  Among other things, Weber's Agreements, pleadings, and interrogatory answers show that Weber gave Defendants confidential information to do their jobs and that Weber may suffer hard-to-identify and hard-to-quantify damages as a result of B/E employing Defendants and thereby gaining access to such information.

[32] *See, e.g., Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that where the summary judgment movant is a defendant, "he must establish beyond peradventure *all* of the essential elements of the [affirmative defense] to warrant judgment in his favor").

[33] *See* Ex. 1, Rojas Decl., to Response [Doc. 66], at ¶¶ 3-7.

Further, Weber disputes that it even encouraged or acquiesced to Defendants working for a competitor based on statements that Weber "[didn't] enforce [the Agreement] anyways"[34] Notwithstanding the current lawsuit against Defendants in which Weber is attempting to enforce the Agreement, Weber previously sent cease-and-desist letters to former Weber employees that left to work for a direct competitor of Weber.[35] If Defendants truly believed that Weber did not enforce the Agreement—as Defendants contend—then they would not have snuck around and lied to Weber about the fact that they were going to work for B/E Aerospace, a competitor. Thus, the Court should deny Defendants' motion for summary judgment on Weber's claim for injunctive relief.[36]

## III.     CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion for Summary Judgment and grant Weber any and all relief to which it may be entitled.

---

[34] Reply [Doc. 75] at 10.

[35] *See, e.g.*, Exs. 22-26, Cease-and-Desist Letters from William Davis, to Response [Doc. 66].

[36] *Travelhost, Inc. v. Modglin*, No. 3:11-cv-0456, 2012 WL 2049321, at *6 (N.D. Tex. June 6, 2012) ("A district court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete.").

Respectfully submitted,

*/s/ Kelly P. Chen*
Michael A. McCabe
Texas Bar No. 24007628
mmccabe@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24040838
wdunwoody@munckwilson.com
Kelly P. Chen
Texas Bar No. 24062664
kchen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, TX 75251
Telephone: 972-628-3600
Telecopier: 972-628-3616

**ATTORNEYS FOR PLAINTIFF
WEBER AIRCRAFT, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that this document was served via email to all counsel of record in accordance with the Federal Rules of Civil Procedure on October 30, 2013.

*/s/ Kelly P. Chen*
Kelly P. Chen